STANDARD STEEL & WIRE CORPORATION, Plaintiff-Appellant, *v.* CHICAGO CAPITAL CORPORATION, Defendant-Appellee.—(STANDARD STEEL & WIRE CORPORATION, Plaintiff-Cross-Appellee, *v.* CHICAGO CAPITAL CORPORATION, Defendant-Cross-Appellant.)

(No. 60122; ▮▮▮▮▮▮▮▮▮▮▮▮

First District (1st Division)—March 3, 1975.

916

Nolan, O'Malley & Dunne, of Chicago (Patrick W. Dunne, of counsel), for appellant.

Arvey, Hodes, Costello & Burman, of Chicago (Irwin I. Zatz, of counsel), for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Standard Steel & Wire Corporation (plaintiff) filed a complaint for specific performance of an alleged agreement to purchase some of its own corporate stock from Chicago Capital Corporation (defendant). Defendant then filed a counterclaim praying specific performance of an alleged agreement for issuance to it of certain additional shares of stock in plaintiff corporation. After a bench trial, the court dismissed both complaint and counterclaim with prejudice. Plaintiff appeals. Defendant cross-appeals.

The issues involved in the complaint and counterclaim are not related. They will receive separate consideration.

I.

*Plaintiff's Complaint*

As a preliminary matter, it is undisputed that defendant received a warrant issued by plaintiff on February 9, 1962, expiring November 30, 1968, for issuance to defendant of 185 shares of stock in plaintiff corporation. On November 27, 1968, defendant exercised this warrant and received these 185 shares at a total cost to defendant of $20,350. Both the warrant and the stock certificate contain provisions which reserve to plaintiff the right of first refusal in event that defendant should choose to sell the shares thus issued. Prior to any such contemplated sale, defendant was obliged to give written notice to plaintiff of its intention to dispose of the stock, "stating the amount proposed to be received by it in connection with such sale * * *." Plaintiff had the right for 30 days following its receipt of such notice "to purchase such shares at a price equal to the price proposed to be received * * *" by defendant.

Plaintiff called as its witness the attorney who had handled the transaction in its behalf. He testified that he had received a telephone call from counsel for defendant on March 31, 1969. Defendant's counsel stated that defendant was going to sell its stock for a price of approximately $52,000 and that subsequently the stock might be sold back to defendant. On cross-examination the witness added that, in this initial conversation, counsel for defendant asked him if plaintiff would waive its rights under the stock agreement. In addition, he was told that defendant wanted "to get this on the record as of March 31 * * *"; the same day on which the conversation occurred.

The two attorneys again discussed the matter on the telephone on April 3, 1969. Plaintiff's counsel further testified that he directed the attention of the other attorney to the terms of the warrant in question and stated that he should have a written notice, a copy of which he could send to his client for consideration. On April 7, 1969, plaintiff's counsel received a letter from defendant's attorney dated back to March 27, 1969, together with a typewritten note initialed by the sender and marked "confidential." These documents were actually mailed on Friday, April 4, 1969.

The letter in question was directed to plaintiff's attorney rather than to plaintiff corporation. It stated in the first paragraph that defendant proposed to sell its stock to Snow Manufacturing Company at a selling price of $285 per share; a total of $52,725. However, in following paragraphs, the letter stated that the warrant provided for notice to plaintiff which would then have the right to purchase the stock for 30 days at the same price. The letter also stated that this aspect had been discussed, with attention to the fact that defendant would like to consummate the transfer "on Monday next, March 31, 1969." The letter then requested that plaintiff corporation "in the light of all of the circumstances, waive its right to such notice in this particular·case, and its right to purchase such shares within the 30 day period * * *." It also asked that the addressee would, "if you could, after discussing the matter wih your client, confirm such waiver in a letter to me." It further stipulated that Snow Manufacturing Company, as new holder of the shares of stock, would be subject to the same restrictions regarding right of first refusal in event of sale, as endorsed upon defendant's stock certificate. It should be noted that defendant corporation and the Snow Company are related by common ownership of stock.

The typewritten note enclosed with the letter was undated. It stated that defendant's attorney had the certificate in his possession with separate stock power attached transferring the shares to the Snow Company.

It requested receipt of "further views at an early date   *  *  *" so that the new certificate would be dated March 31, 1969.

Plaintiff's attorney further testified that shortly after the initial telephone conversation, which took place on March 31, 1969, and prior to the next telephone conversation, he consulted with the treasurer of plaintiff corporation and asked him if the cash required to exercise plaintiff's right of purchase of the stock could be accumulated in 30 days. He never thereafter told defendant's counsel that he was making continued efforts to obtain the cash so that his client could purchase the stock, although he was primarily concerned with that activity. It should be noted with particularity that plaintiff's counsel was informed at all times that the suggested transaction was not a sale at arm's length in the usual sense of the word but was strictly a transaction for convenience. The letter in question was written by defendant's counsel only at the request of the attorney for plaintiff.

The record also shows that about April 22 or 23 counsel for plaintiff called the same attorney for defendant and asked if the proposed sale of the stock was for cash on installments. The attorney responded that he did not know but did not think it would make any difference since plaintiff was not going to exercise the option. Plaintiff's counsel responded to the effect that his client was in fact going to do so. The evidence shows that plaintiff was successful in its effort to accumulate the needed amount of cash. It is undisputed that plaintiff did, on May 1, 1969, actually make tender of the proper amount of cash to the attorneys and several agents of defendant together with service of notice of its election to exercise its right to purchase the stock.

In this court, plaintiff urges that the legend on the stock certificate giving it the right of first refusal is lawful; such right is a unilateral contract which becomes a bilateral contract upon acceptance by plaintiff as purchaser; and, after such acceptance by plaintiff, defendant had breached the contract of first refusal so that plaintiff is entitled to specific performance. Defendant responds that it did nothing which would give rise to a right of plaintiff to purchase the stock but merely requested that plaintiff waive its right of first refusal; defendant did not breach the legend on the stock certificate which gave plaintiff a right of first refusal, as defendant neither made nor accepted an unconditional offer for sale of the stock and did not actually sell it. In addition, defendant urges that plaintiff has filed no reply to new matter alleged in defendant's answer regarding the authority of defendant's attorney in connection with the transaction.

The basic issue which thus arises is the legal significance of the letter dated March 27, 1969. Plaintiff argues that the restrictions on transfer of

the stock were lawful and constituted a binding unilateral contract which became an enforceable bilateral contract when the plaintiff as purchaser accepted and acted upon the notice served by defendant. It is therefore the essence of plaintiff's claim that the letter was unconditional and binding and that defendant was bound by the conditions thereof, all pursuant to the endorsement upon the stock certificate. Defendant does not take issue with these legal principles except for the last proposition. Defendant construes the letter from its counsel, in the light of the entire record, as being a request that defendant waive its right of first refusal and further takes the position that it had never actually sold the stock in question as plaintiff well knew at all times. The solution to the problem does, in our opinion, indeed rest upon the legal significance of the letter.

Careful examination of the letter itself shows that it is capable of being understood in more senses than one. The letter commences with a statement of fact that defendant proposes to sell the stock and states the selling price. There is, however, no statement as to whether the price is cash or whether the consideration is to be paid in installments. Counsel for plaintiff recognized this deficiency when he called defendant's attorney and attempted to supplement the letter by a verbal commitment. Of crucial importance is the fact that the letter on its face does not purport to be merely a notice of proposed sale. On the contrary, it goes much further and expressly requests a waiver of "such notice in this particular case * * *." It would indeed be anomalous, in the light of this language, to assume that the letter itself was intended to be a notice and yet expressly requested waiver of the right to receive that same notice.

■■ The meaning of the letter is further shown to be doubtful and unclear by the divergent positions of the parties here. The briefs contain able arguments by respective counsel on both sides of the issue. Assuming these statements to be without sophistry, as they undoubtedly are, the existence of this very disagreement tends strongly to indicate that we are dealing with an ambiguous document. An ambiguous contract has been defined as "one capable of being understood in more senses than one * * *." *First National Bank v. Victor Comptometer Corp.*, 123 Ill.App.2d 335, 341, 260 N.E.2d 99.

This record shows that a trial plaintiff did not depend upon the letter as being clear and unambiguous. Plaintiff not only introduced in evidence the confidential note enclosed with the letter, but also called its own witness to bring out the preliminary conversations between the attorneys which resulted in the sending of the letter. Whether or not this letter is ambiguous, so that parol evidence will be considered in construing it, was a question of law for determination by the court. (*Farns-*

*worth v. Lamb,* 6 Ill.App.3d 785, 789, 286 N.E.2d 74.) We conclude that this letter is in law an ambiguous document so that it was necessary to construe its meaning.

■■ In this type of case, the paramount objective of such construction is to ascertain the intention of the parties. The document must be construed as a whole with meaning and effect given to every provision. Each part of the letter should be viewed in the light of the other parts. Previous agreements, negotiations and circumstances may be considered in determining the meaning of the entire document. A clear exposition of all of these principles is set forth in *Martindell v. Lake Shore National Bank,* 15 Ill.2d 272, 283, 154 N.E.2d 683.

■■ In ascertaining the meaning of an ambiguous document where the language leaves the true intent of the writer in doubt so that it is necessary to receive extrinsic evidence, the question becomes one for the trier of fact. *Franks v. North Shore Farms, Inc.,* 115 Ill.App.2d 57, 68, 69, 253 N.E.2d 45, citing *Schneider v. Neubert,* 308 Ill. 40, 139 N.E. 84.

So that the transaction may be viewed in its true perspective, it seems clear that defendant never intended to consummate an arm's length sale of its stock. No actual transfer of the stock was ever completed. The certificate and stock power were never delivered to any transfer agent or to any agent of plaintiff corporation. On the contrary, plaintiff's lawyer was clearly told on March 31, 1969, that the transfer was to be colorable or temporary; it had to be completed on the very day on which the telephone call took place and what counsel for defendant actually wanted, and was attempting to obtain, was a simple waiver of plaintiff's rights under the legend on the stock certificate.

Counsel for plaintiff understood this matter clearly at all times. He requested that defendant's attorney send him the letter in question. He noted that when he did receive the letter it had been predated. He never stated to counsel for defendant that he would not, or his client would not, agree to the waiver but instead he commenced at once to obtain the necessary cash with which to make a tender for the stock without disclosing this to the other attorney. The statement in the confidential note, regarding the importance of dating the new certificate March 31, 1969, also shows the intention of the writer of the letter. In making a factual determination of the true meaning of the entire letter, the findings of the trial court can be set aside only if the evidence overwhelmingly favors the losing party. We cannot say that the result reached by the trial court here is manifestly against the weight of the evidence. (*Reese v. Melahn,* 53 Ill.2d 508, 512, 513, 292 N.E.2d 375.) In the case before us, all of the evidence greatly preponderates in favor of defendant's position.

Two more thoughts require brief consideration. Although not cited

by either party, two decisions require comment. In *Kadansky v. Fickett,* 54 Ill.2d 14, 294 N.E.2d 262, in accepting an option, plaintiff's attorney wrote to defendant's attorney and stated that his clients "wish to exercise their option to purchase the property  *  *  *." He also stated he was advised that the respective clients had agreed generally to a method of payment varying that set out in the agreement. The supreme court held that the entire letter was an unconditional exercise of the option and that the second paragraph asserted no new demand or condition and did not add any condition to the completed exercise of the option.

The court cited *Gaskins v. Walz,* 409 Ill. 40, 97 N.E.2d 798. There, the letter stated that the option contained in the letter "is hereby exercised." The letter also went on to state that the furnishing of a survey as provided in the option might not be necessary after examination of the abstract of title. The court held that the first sentence of the letter was an unequivocal acceptance of the option without condition and the latter portion of the letter regarding the abstract was a mere request as distinguished from language which created a condition of the acceptance.

In our opinion, the case before us presents a factual situation quite divergent from *Kadansky* and *Gaskins.* The first paragraph of the letter merely states that defendant proposes to sell the shares. The selling price is given but no other conditions of the sale are stated. The second portion of the letter departs entirely from the posture of notice of a sale and instead discusses the need to transfer the shares on March 31, 1969, and the confirmation to the writer of the letter of a waiver of plaintiff's right to purchase. Thus, the letter, considered with the confidential note enclosed, creates an ambiguity as both parties apparently recognize. On the contrary, the acceptances in the option cases are both clear and unconditional and, consequently, unambiguous.

■■  We accordingly conclude that under a proper and correct construction of the documents before us, they amount simply to an attempt by an attorney to obtain a waiver of the right of first refusal contained in the stock legend. It follows that such action by the attorney would have been authorized by defendant corporation as within the usual and ordinary scope of the performance of legal duties. Under this view of the case, we need not consider the possible issues concerning authority of the attorney which might possibly result from the interpretation of the dealings between the two lawyers as urged by plaintiff. The judgment order dismissing plaintiff's complaint is affirmed.

## II.

### Defendant's Counterclaim

Defendant alleged in its counterclaim that on February 9, 1962, it

received a warrant granting it the right to subscribe to 185 shares of common stock in plaintiff corporation. A copy of this warrant was appended to plaintiff's complaint. Defendant exercised this right and purchased 185 shares on November 27, 1968. On information and belief, defendant further alleged that, prior to exercise of the warrant and on or about July 15, 1966, plaintiff gave three of its officers options to purchase additional stock in plaintiff corporation. Defendant alleged that it was thus entitled to an increased number of shares but plaintiff has refused to make such delivery upon demand. Defendant prayed an accounting regarding all rights to purchase the additional shares, computation of the amount of shares to which it was entitled and a judgment for delivery thereof.

Plaintiff's answer to the counterclaim admitted issuance of options, to three of its officers on or about July 15, 1966, for purchase of its common shares but added "that such stock options were only given after prior notification, knowledge and approval of * * *" defendant. The answer alleged that defendant, with full knowledge of the existence of the options, had failed to assert or claim additional shares. In addition, plaintiff alleged that the provisions of the warrant had no effect until the stock options were actually exercised and that no employees have exercised said options.

Defendant filed a reply to the answer of plaintiff to the counterclaim. Defendant denied that the stock options were given after notification, knowledge and approval of defendant and alleged "that such options were given without the knowledge, notification or prior approval of [defendant]."

After the parties had rested on trial of plaintiff's complaint, the court then immediately proceeded with trial upon the counterclaim. Defendant offered no evidence but rested its case on the pleadings. Plaintiff called only the attorney who had handled the transaction and who had testified concerning the complaint. This witness was secretary of plaintiff for many years. He testified that no stock options were ever exercised for purchase of stock in plaintiff corporation; and that, as of the date of his testimony, any and all stock options that might have existed had expired by their terms. Defendant objected to this testimony on the ground of materiality. The objection was overruled. Defendant did not cross-examine the witness and both sides then rested on the counterclaim.

In this court, defendant contends that no evidence was needed to sustain its counterclaim but that, under the terms of the warrant, defendant is entitled to purchase additional shares upon issuance of the options quite apart from their exercise. Plaintiff urges that the warrant must be construed so that defendant is entitled to purchase additional

shares only if the stock options had actually been exercised. Determination of the rights of the parties thus turns upon the provisions of the warrant. No stock options are before us; therefore, we are unaware of their provisions. The record, both pleadings and testimony, shows only that defendant issued stock options to some of its employees while plaintiff held its warrant; none of these options was exercised and all had expired as of the date that the case was tried. We have before us simply a legal question as to the intent and meaning of the warrant.

The warrant in question is rather a lengthy legal document, obviously drawn in considerable detail and with great care. It sets forth five situations which would require an increase of the number of common shares which defendant could obtain by exercising the warrant. These five contingencies may be briefly summarized:

(a) Any increase or decrease of outstanding common shares through recapitalization.

(b) Issuance of stock dividends.

(c) Payment of cash dividends.

(d) Provisions to protect the rights of the warrant holder in event of a merger or consolidation involving plaintiff and another corporation.

The warrant then continues with paragraph (e) around which the contentions of both parties revolve. This paragraph states:

"(e) The issued and outstanding common shares of the Company shall be increased to a number in excess of the number of common shares outstanding as at the date hereof through the sale of common shares or in any other manner not contemplated by clauses (a) through (d) above (herein called a "non-specified disposition") the number of shares which the holder of this warrant shall be entitled to purchase under this warrant shall be increased in proportion to each such increase, on account of each such non-specified disposition, in the number of issued and outstanding common shares of the Company. In the computation of the increased number of shares deliverable upon the exercise of this warrant, any sale or other disposition of securities convertible into common shares of the Company or options or warrants to purchase common shares of the Company (excluding common shares issuable upon the exercise of this warrant and any other warrants outstanding as at the date hereof) shall be treated as a sale or other disposition of common shares to the extent that such shares are issuable upon the conversion or exercise thereof."

It should be noted with the utmost of care that prior to the statement of the five contingencies designated (a) to (e) inclusive, the warrant introduces and qualifies them with use of the following language:

"In the event prior to the expiration of this warrant by exercise thereof or by its terms."

■■ In ascertaining the meaning of this document, it is our duty to consider every provision and every word in the entire warrant as well as in the paragraph at issue so that we may arrive at the intention of the parties in the issuance and delivery of the warrant. (*Martindell v. Lake Shore National Bank*, 15 Ill.2d 272, 283, 154 N.E.2d 683.) It may be said that one of the prime purposes of issuance and acceptance of the warrant was to protect the quantum of defendant's interest in plaintiff corporation prior to the time it exercised the warrant and became a full-fledged shareholder. One of its purposes certainly was to prevent the stock interest of defendant from becoming diluted by the possible issuance of large numbers of additional shares prior to conversion of the warrant.

■■ Defendant urges that the important language here is the very last phrase in paragraph (e) providing that any outstanding options "shall be treated as a sale or other disposition of common shares to the extent that such shares are issuable upon the conversion or exercise thereof." However, it is futile to consider merely this language. It is of equal importance that we consider the contingency intended to be met by paragraph (e); namely, an increase in the "issued and outstanding common shares of" plaintiff corporation which would certainly have affected the rights of the warrant holder. The balance of the paragraph is clearly limited to implement this contingency. The language at the very end of the paragraph, depended upon by defendant, is, in our opinion, merely a delineation of the method to be used in computing the additional shares available to defendant upon exercise of the warrant in the event that the issued and outstanding shares of plaintiff corporation had theretofore been increased.

Further thought serves to support this conclusion. The basic purpose of warrant was to protect the holder thereof against issuance of additional shares prior to its exercise. We can find no language in the entire warrant which shows an intent to preserve its life and effect after it has been exercised and presumably canceled. Implementation of such intent would certainly require most direct and specific language which we do not find in the entire document. On the contrary, the above quoted introduction preliminary to the statement of the contingencies expressed in the warrant contains specific language limiting the operation of these contingencies to the time "prior to the expiration of this warrant by exercise thereof * * *." In addition, defendant has converted its warrant into corporate stock and all issued options have expired without being exercised. Defendant no longer requires, nor is it eligible for,

the protection of paragraph (e). In fact, granting additional shares to defendant at this time would give it an unfair windfall neither required nor justified by the dealings between these parties.

Matters of prior notification, knowledge and approval of defendant as to issuance of stock options are not material here. The crucial point is that before defendant exercised its warrant and became a full-fledged shareholder, on November 27, 1968, the "issued and outstanding common shares" of plaintiff corporation had not been increased by the exercise of any option as required by the very terms of paragraph (e) before the balance of the provisions thereof became operative. We therefor conclude that the trial court arrived at a correct result by the order dismissing defendant's counterclaim with prejudice.

Judgment for defendant on plaintiff's complaint affirmed. Judgment for plaintiff on defendant's counterclaim affirmed.

BURKE, P. J., and EGAN, J., concur.