HAGERTY, LOCKENVITZ, GINZKEY AND ASSOCIATES, Plaintiff-Appellee,
v. ROBERT E. GINZKEY, Defendant-Appellant.

Fourth District   No. 15856

Opinion filed June 25, 1980.

GREEN, J., specially concurring.

Merrick Hayes & Associates, Ltd., of Bloomington, for appellant.

Pratt, Larkin, Sternberg & Finegan, P. C., of Bloomington, for appellee.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

A covenant not to "*compete.*"

Enforced below; $7,313.72 in damages.

We reverse.

Robert Ginzkey (the defendant) was found to have breached a covenant not to compete which was contained in an agreement he entered into with the plaintiff corporation upon the conclusion of his relationship with that corporation. Prior to the agreement, defendant was a co-founder, officer, director, shareholder, and employee of the plaintiff corporation. He was ordered to pay $7,313.72 in damages, such sum representing the corporation's lost profits.

The decisive portion of the agreement was a provision which stated:

"* * * Shareholder [defendant] agrees that for a period of one (1) year from the date hereof as to any clients of Corporation as of the date hereof, Shareholder will not directly or indirectly compete with Corporation in the advertising business, * * *."

The corporation's complaint asserted—and the trial court found— that defendant breached this provision by obtaining the entire advertising business of Mortell, Inc., in contravention of the terms of the agreement.

Defendant now argues on appeal that the decision of the trial court was against the manifest weight of the evidence, that the corporation did not have a protectable property interest in the Mortell account, and that the trial court applied an improper measure of damages. We do not address the second and third arguments because we find that there has been no breach of the agreement.

At the outset, we should note that the validity of the agreement has not been questioned nor has the sufficiency of the consideration. Additionally, there is no dispute that Mortell was a client of the plaintiff corporation on the date of the agreement or that defendant did business with Mortell within the one-year period. The narrow question involved, as we perceive it, is whether defendant competed with the plaintiff corporation.

The trial court's order, while declaring a result, provides no legal analysis for the conclusion which is drawn. This is unfortunate, since we are therefore forced to speculate as to the basis for the decision.

■■ In determining whether defendant breached the contract, it was incumbent upon the trial court to determine what action or inaction was mandated by the contract terms. In general, the meaning to be given to the plain words of a written instrument is a question of law for the court's determination where the parties have attached no unusual or peculiar meaning to the words. (*Ahlvers v. Terminal R.R. Association* (1975), 31

Ill. App. 3d 166, 334 N.E.2d 329.) Where, however, the language leaves the true intent of the writer in doubt so that it is necessary to receive extrinsic evidence, the question becomes one of fact for the trier of fact, in this case the trial court. *Standard Steel & Wire Corp. v. Chicago Capital Corp.* (1975), 26 Ill. App. 3d 915, 326 N.E.2d 33.

While we cannot say with certainty that the trial court felt that the contract was ambiguous, we hold that it was not, and that—given the facts presented—defendant did not breach the contract.

An ambiguous writing is one capable of being understood in more than one sense. (*State Security Insurance Co. v. Linton* (1978), 67 Ill. App. 3d 480, 384 N.E.2d 718.) But a contract is not rendered ambiguous simply because the parties do not agree on its meaning. *Harris v. American General Finance Corp.* (1977), 54 Ill. App. 3d 835, 368 N.E.2d 1099.

■■ The defendant testified that he interpreted the term "compete" to refer to active, aggressive solicitation of business. John Hagerty, the president of the plaintiff corporation, stated that he understood the provision to prohibit defendant from soliciting or doing business with any of plaintiff's customers. This differing understanding does not, however, lead to an ambiguity. *Harris.*

The word "compete" is a common word which is not easily susceptible to peculiar interpretations. "Compete" means to seek or strive for something for which others are contending or to vie with another for a prize. (Webster's Third New International Dictionary 463 (1959).) Similarly, it means to contend emulously; to strive for a position, reward, profit or goal for which another is striving; to contend in rivalry. Black's Law Dictionary 257 (5th ed. 1979).

■■ The critical feature of the above definitions is that they all require a volitional act by the competitor. A person must seek, strive, vie, or contend. As applied to a covenant not to compete, a covenantor, who is merely present and available but has not actively solicited business, has not competed.

Having determined the meaning of the term, let us now review the facts. Defendant testified that his first contact with the client Mortell after his departure from the plaintiff corporation was at the National Hardware Show in Chicago in mid-August of 1978. At this time, he spoke with Don Mortell (president of the client corporation), Ray Rivard (manager of the weatherstripping division), and Willard Huff (the sales manager). Defendant did not discuss his future plans at that time. In mid-September, defendant received a call from Rivard, who inquired as to defendant's job prospects. Defendant told Rivard that he was considering opening his own agency and Rivard asked the defendant to let him know "how you're coming along."

The next contact came around November 16, 1978, when Rivard

phoned and told defendant that he was terminating his relationship with the plaintiff corporation. Defendant advised Rivard that he was still considering opening his own agency and that he could not work for Mortell. On November 20, defendant met with Rivard in the latter's office. This meeting was a social call and no advertising business was discussed. Sometime around November 28, 1978, defendant received a copy of a letter sent by Mortell, Inc., to the plaintiff corporation, in which Mortell informed the plaintiff corporation that it would no longer be using its services. Defendant then met with Rivard and they discussed advertising for the following year.

Defendant's testimony was substantially corroborated by Rivard. Rivard further added that defendant informed him in November that he could do no business for Mortell until they terminated their relationship with the plaintiff corporation. Rivard also stated that he decided to cease using the plaintiff corporation's services in mid-August and immediately began investigating other advertising agencies.

■ This evidence, which was uncontradicted, clearly fails to establish that defendant competed with the plaintiff corporation for the Mortell account.

Plaintiff relies upon the decisions in *O'Sullivan v. Conrad* (1976), 44 Ill. App. 3d 752, 358 N.E.2d 926, and *Cockerill v. Wilson* (1970), 130 Ill. App. 2d 679, 265 N.E.2d 514, *rev'd in part* (1972), 51 Ill. 2d 179, 281 N.E.2d 648, in claiming that active solicitation is not required for there to be competition and that the mere opening of another advertising agency was sufficient. Plaintiff's reliance was misplaced.

In *O'Sullivan*, an agreement was signed for the sale of two ongoing optical facilities. The agreement provided that the seller would be employed by the buyer for a period of one year. Upon the termination of the seller's employment, the agreement provided that the seller would not engage in a competing optical business within a 75-mile radius for a period of five years. Four years after leaving the buyer's employ, the seller opened an optical office 40 miles from the original office. The buyer brought a suit for an injunction which was entered by the trial court.

In affirming, the Fifth District first found that the covenant was reasonable and that it was not injurious to the public. As to the defendant's last contention—that no breach had been established because buyer had not shown *active* solicitation—the court found the issue waived by defendant's failure to present it to the trial court.

The *Cockerill* decision is distinguishable by the fact that the word "compete" was not used in the agreement under consideration. 51 Ill. 2d 179, 181, 281 N.E.2d 648.

Even assuming that the trial court found that the contract was ambiguous, our decision would be the same. Covenants not to compete

are strictly construed and interpreted, and any doubts or ambiguities must be resolved in favor of the natural rights and against the restriction. (*Southwest Forest Industries, Inc. v. Sharfstein* (7th Cir. 1972), 482 F.2d 915.) The effect of this rule is to place the burden on the plaintiff in this case. We find that the plaintiff has failed.

■■ The defendant testified that he interpreted the provision to prohibit active solicitation of business. Hagerty stated that the terms of the contract were broad enough to cover any business done by the defendant with any client of the plaintiff corporation. In addition, defendant presented opinion testimony from a witness who had been involved in the advertising industry since 1960. The witness stated that the word "compete" as used in the industry meant active solicitation of business. Furthermore, both Rivard and Hagerty stated that Mortell was free to seek the services of another agency at any time.

We do not conclude that the plaintiff has established that the parties intended the term "compete" to be synonymous with "doing business."

The decision of the trial court is therefore reversed.

Reversed.

LEWIS, J., concurs.

Mr. JUSTICE GREEN, concurring specially:

I concur in the reversal of the trial court's judgment because, as concisely stated by the majority, the trial court's apparent determination that the agreement prohibited defendant from accepting the account of plaintiff's former client during the one-year period was contrary to the manifest weight of the evidence. I also note that the agreement that defendant would not "compete" was applicable only in regard to plaintiff's existing clients. For that reason and under the facts of the case, it would seem most likely that if the parties had intended to prohibit defendant from doing any business with those clients, the agreement would have been drafted to so state.

However, I do consider the phrase "directly or indirectly compete" to have been ambiguous. Some entities do compete for business merely by their presence and announced availability. Until fairly recently, at least, this was true of lawyers and many other professionals, and personal solicitations are still not properly made. An agreement by one such professional not to compete against certain others of that profession would not necessarily be limited to a prohibition against active solicitation. Here, the use in the agreement of the adverb "indirectly" tends to further negate certainty that active solicitation was an essential element of the conduct prohibited. The trial court properly examined extrinsic evidence to determine the meaning of the phrase.