A-TECH COMPUTER SERVICES, INC., Plaintiff-Appellee, v. WAYNE SOO HOO, Indiv. and d/b/a Zoetec Computer Services, Inc., *et al.*, Defendants-Appellants.

First District (5th Division)  No. 1—92—0559

Opinion filed July 16, 1993.—Rehearing denied January 31, 1994.

Vojta, Lagattuta & Kelly, P.C., of Schaumburg (John C. Vojta and Santo P. Terenzio, of counsel), for appellants.

Alfred L. Levinson and James C. Siebert, both of Des Plaines, for appellee.

JUSTICE COUSINS delivered the opinion of the court:

This is an interlocutory appeal taken pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)). The circuit court entered a preliminary injunction prohibiting defendants, Wayne Soo Hoo, d/b/a Zoetec Computer Services, Inc., and S.K.I. Computers, Inc. (defendant), from soliciting clients belonging to plaintiff, A-Tech Computer Services, Inc. (plaintiff).

The issues presented for review are: (1) whether the trial court erred in granting a preliminary injunction in plaintiff's favor and, consequently, erred in denying defendant's motion for directed finding; (2) whether the trial court erred in reopening the evidence after plaintiff rested; and (3) whether the trial court erred in refusing defendant permission to introduce evidence explaining alleged ambiguities in the nonsolicitation agreement, and in barring testimony of defendant's former attorney.

We affirm.

BACKGROUND

Plaintiff filed a complaint against defendant for injunctive relief and damages. The complaint was pursuant to a nonsolicitation agreement dated May 31, 1990, between the parties. The pertinent part of said agreement read as follows:

> "*Covenant Not to Solicit.* Seller and the Company agree that the Company's business depended, to a considerable extent, on the unique background and individual efforts of Seller. Accordingly, and in consideration of the Company's purchase of the Seller's shares of stock and payment hereunder, *Seller covenants and agrees that he will not for a period of two (2) years from the 26th of March, 1990, engage directly or indirectly in the solicitation of any client of Company (either as principal, agent or consultant) or through any corporation, firm or organization in which he may be an officer, director, employee, shareholder, partner, member of otherwise affiliated. The solicitation precluded by this Agreement is of any present client of A-TECH COMPUTER SERVICE, INC., for any computer related business or employment for services for whom Company was actively engaged in business with as of March 26, 1990. Further, Seller is only restricted from soliciting said clients*

*for business that was being actively performed for that particular client as of March 26, 1990.* Further, Seller will not disclose or appropriate to his own use or the use of any other person or entity any trade secret or confidential information of, or confidential knowledge pertaining in any way to, the business of Company or any subsidiary of Company." (Emphasis added.)

This agreement was part of the parties' capital stock repurchase agreement whereby defendant sold his interest to plaintiff.

On March 19, 1991, plaintiff filed a motion for temporary restraining order alleging that defendant violated the nonsolicitation agreement by soliciting some of plaintiff's clients.

On March 27, 1991, the trial court entered a temporary restraining order against defendant to preserve the status quo and to restrict defendant pursuant to the nonsolicitation agreement. On April 25, 1991, a hearing was held on plaintiff's motion for preliminary injunction.

Defendant testified that he sent advertisement letters to an unknown number of plaintiff's clients. Six witnesses who were/are plaintiff's clients testified to the following.

Linda Burke, of the Matthews Company, testified that since at least 1986, her company used plaintiff for all of its computer needs and that her company was currently under a two-year-maintenance contract with plaintiff. She further testified that defendant went by her office and offered to provide maintenance of the company's computer system or sell some equipment. Ms. Burke testified that the services or sales offered by defendant were exactly those which plaintiff had provided for her company since 1986.

Omar Mohammed, of Northwestern Business College, testified that his employer had used plaintiff for all of its computer needs since 1987. He further testified that the defendant telephoned him on two occasions attempting to sell him computer equipment. Mr. Mohammed testified that defendant tried to sell him what was exactly the type of computer equipment which he purchased and had maintained under the contract by plaintiff exclusively since 1987.

Donn Ellis, of the Aurora Sanitary District, testified that his employer had used plaintiff for its Texas Instruments computer hardware purchases and maintenance exclusively from April 1986 through April 1990. He further testified that he received an advertisement letter from defendant dated July 5, 1990. Mr. Ellis further stated that since receiving the letter, he had paid defendant for maintenance services and has a contract with defendant pending budget approval. Mr.

Ellis testified that he would not have requested defendant to perform those services had he not received his solicitation.

Charlene Thompson, of R.W. Graybill, testified that, for many years, plaintiff has provided all of her company's computer services, including hardware and maintenance. She further testified that she received two advertisement letters from defendant with attached literature on buying, selling, and repairing the same equipment that plaintiff supplied.

Karen Swierenga, of Crane Construction Company, testified that plaintiff had provided all of her company's Texas Instruments hardware and maintenance needs, pursuant to contract, since 1986. She further testified that defendant sent her a letter in regard to the services offered and that letter specifically solicited hardware sales and maintenance for the Texas Instruments system.

Craig Samuelson, of K-5 Construction, testified that plaintiff had been providing his company's Texas Instruments computer hardware and maintenance under contract continuously since at least March 1988. He further testified that defendant sent him some advertisement letters, called him in December 1990, and inquired if defendant could provide his company with assistance in the purchase or maintenance of existing equipment.

During the course of the hearing, the trial court stated:

"The phrase in quotes, further seller is only restricted from soliciting said clients for business that was being actively performed for that particular client as of March 26, 1990 end quote was not meant to permit [*sic*] the defendants from engaging in computer related business.

Therefore the covenant precluded all activities which the defendant engaged in as shown by the plaintiff's evidence.

To rule otherwise would render the covenant valueless and unenforceable because of the interrelationship between various computer business services. The intent of the parties was not as such.

The term client is to be defined as of March 26, 1990 and would include those under contract, verbal or written, as of the date and those persons who had had a continuous relationship with the plaintiff for a reasonable period of time preceding March 26, 1990.

It would not include those who had not had a business relationship for more than two years. And it might not include others who did not have a continuous business relationship.

Although the evidence as to damages was asserted and proved, the particular amount of those damages was not shown although the fact of the damages was shown, and correspondingly, under the circumstances no particular relief can be given for damages.

Under these circumstances a temporary restraining order or temporary injunction will be granted. The only area which might include need for additional evidence is those clients who are disputed as to whether or not they have had a continuity of continuous relationship prior to that point.

And on that point the court will permit further evidence."

The court further stated:

"Now, all I can say at this particular point is those who had verbal contracts or written contracts at the time are considered to be clients. Those who had a continuing relationship before that date are certainly clients. Those we would have to go through the entire list which is quite a list."

The court continued:

"And under the circumstances, I would open up to proofs as to that issue only, as to no other issue, as to the relationship of continuous relationship of clients and so forth.

Now, as to damages I don't believe the evidence it establishes damages. I believe there were damages, but I can't tell you how much dollar amount there is and I could not assess damages. There was no assessment of the damages as to the particular clients. I will permit evidence as to each client.

How many are there, two seventy?

MR. SIEBERT [Plaintiff's counsel]: I think it's a possibility after today's date to make a determination based upon your ruling who is a client or was not the client and, therefore, modifying the order."

The court further said:

"THE COURT: I think the question is there are two issues here. The first issue was whether or not in the opinion of this court the second phrase that was inserted had the effect of vitiating the first clause concerning whether or not you could have people who were in computer related businesses whether they could be functioning at the same level in computer related businesses.

I resolved that in your favor— *** ."

The court stated:

"Because of certain testimony that came to my attention that these businesses were virtually interrelated that you couldn't have one without the other.

*Now, the area that is somewhat fuzzy is the question of what is a client was not defined here and so I find those which you had contracts with, verbal or written, at the time which were ongoing and the next one was those that you had a continuous relationship with.*

Now, the specificity of the evidence was such that we did not go over the list all the way through the list and I think the first go round has as its purposes the parameters defining what the parameters of the hearing was and no particular order will be signed unless we have that gone through.

Now, there may be areas where you can both agree this person was under contract, this person was not. That is easily defined. The more difficult to define are those who have a more continuous relationship. There, there may be those that were not clients.

My suggestion under the circumstances is that the two of you and your clients confer and go over the client list. If there's a dispute after you're through I will hear evidence as to the disputed parties and determine whether or not they are clients." (Emphasis added.)

The court further stated that it would not wade through 625 relationships to determine which companies were plaintiff's clients. The trial court deemed that the term "client" was to be defined as of March 26, 1990, by those companies which had had a relationship with plaintiff within two years and as emphasized in the quote above.

The court also stated that the intent of the parties had been deduced from the contract and the evidence. The court later reiterated that it would allow plaintiff to reopen its case for the sole purpose of demonstrating clients with whom plaintiff had been actively engaged and those with whom plaintiff had contractual relationships for the previous two years.

The trial court granted plaintiff's motion for preliminary injunction and this interlocutory appeal followed.

# I

Defendant contends that the trial court erred in granting plaintiff's motion for preliminary injunction and in denying defendant's motion for a directed finding. We disagree.

The scope of review in an interlocutory appeal is normally limited to determining whether the trial court abused its discretion in granting or refusing the requested interlocutory relief. *Zurich Insurance Co. v. Raymark Industries, Inc.* (1991), 213 Ill. App. 3d 591, 594, 572 N.E.2d 1119; *Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 690, 329 N.E.2d 414.

In determining whether the trial court abused its discretion, an appellate court should not decide whether it agrees with the trial court, but rather, the salient question is whether the circuit court

" 'acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted.' " *Zurich*, 213 Ill. App. 3d at 595, quoting *In re Marriage of Aud* (1986), 142 Ill. App. 3d 320, 326, 491 N.E.2d 894, 898.

Thus, a court of review looks to the sufficiency of the evidence, not to determine controverted rights or to decide the merits of the case, but only for the limited purpose of ascertaining whether the trial court abused its broad discretion. *Hayden's Sport Center, Inc. v. Johnson* (1982), 109 Ill. App. 3d 1140, 1145, 441 N.E.2d 927.

The issuance or denial of a preliminary injunction is addressed to the trial court's sound discretion, and its findings will not be disturbed unless they are against the manifest weight of the evidence. *Booth v. Greber* (1977), 48 Ill. App. 3d 213, 217, 363 N.E.2d 6.

To meet the burden of proving that a plaintiff is entitled to injunctive relief, plaintiff is required to establish by a preponderance of the evidence (1) that he possesses a certain and clearly ascertainable right which needs protection, (2) that he would suffer irreparable injury without protection of the injunction, (3) there is no adequate remedy at law for the injury, and (4) that he is likely to prevail on the merits. *G.A. Carney, Ltd. v. Brzeczek* (1983), 117 Ill. App. 3d 478, 482, 453 N.E.2d 756.

■■ An employer has a valid interest in protecting its long-standing client relationships against the subterfuge and sabotage of former employees. See *Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 184, 281 N.E.2d 648 (clients of an established veterinarian protectable); *Canfield v. Spear* (1969), 44 Ill. 2d 49, 52, 254 N.E.2d 433 (clients of existing medical practice protectable).

Plaintiff has established a certain and clearly ascertainable right which warrants protection. Defendant entered into a nonsolicitation agreement with plaintiff as part of his sale of his ownership interest

in plaintiff's corporation. The clear and ascertainable right which needed protection here was plaintiff's client base.

Some factors which determine whether the employer has a legitimate, protectable interest are: the number of years required to develop the clientele, the amount of money invested to acquire clients, the degree of difficulty in acquiring clients, the extent of personal customer contact by the employee, the extent of the employer's knowledge of its clients, the duration of the customers' activities with the employer, and the intent to retain employer-customer relations. *McRand, Inc. v. Van Beelen* (1985), 138 Ill. App. 3d 1045, 1051-53, 486 N.E.2d 1306.

The verified complaint filed by plaintiff alleged that its relationships with its clients were uniquely valuable because clients were difficult and expensive to obtain, the difficulty of obtaining clients required plaintiff to expend substantial sums in developing and maintaining its clients, plaintiff developed an in-depth understanding of its clients' particular needs, and it can take months, sometimes years, of constant contact with a potential client before a relationship develops.

Defendant had client knowledge that he would not have but for his employment with plaintiff. As a founding shareholder, officer, and employee of A-Tech, defendant had intimate knowledge of the needs of plaintiff's clients. Defendant was compensated to cultivate professional relationships with the key contacts at these businesses. Testimony of Donn Ellis of Aurora Sanitary District and Craig Samuelson at K-5 Construction, as well as defendant's testimony, clearly demonstrates that the defendant established close, professional relationships as a direct result of his association with plaintiff.

Plaintiff established the existence of irreparable harm absent issuance of an injunction. Once a protectable interest is established, irreparable injury to the plaintiff is presumed if the interest remains unprotected. *McRand*, 138 Ill. App. 3d at 1054.

Defendant testified that he had a contract with Crescent Cardboard, Monroe Partners, and N.E. Brands. These contracts were effected after March 26, 1990. The aforementioned companies were formerly plaintiff's clients. Defendant performed essentially the same work for these companies as did plaintiff.

Defendant also testified that he had dealings with numerous other companies which were plaintiff's clients. He sent them letters prior to contacting or being contacted by him. Defendant provided these companies with either services or sales.

Plaintiff has no adequate remedy at law. While pecuniary damages can be calculated, loss of competitive position is intangible, incapable of being measured. See *Cross Wood Products, Inc. v. Suter* (1981), 97 Ill. App. 3d 282, 286, 422 N.E.2d 953.

The amount of damage is manifested as a loss of customers, goodwill, and future profits. These are so variable in nature that damages are hard to assess with any degree of accuracy. Here, defendant has testified that he sent advertisement letters to an unknown number of plaintiff's clients, so it is impossible to determine what future losses are attributable to defendant's solicitous actions. However, the fact that the ultimate relief may be a money judgment does not deprive a court of equity of the power to grant a preliminary injunction. *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1978), 62 Ill. App. 3d 671, 686, 379 N.E.2d 1228.

■ Plaintiff has established a probability that it will succeed at trial on the merits. The test for enforcing a covenant is whether it is reasonably necessary to protect the employer from unfair competition. (*Morrison Metalweld Process Corp. v. Valent* (1981), 97 Ill. App. 3d 373, 376, 422 N.E.2d 1034.) Implicit in this test are two questions: (1) whether there is a legitimate business interest which needs protection, and (2) whether the covenant is reasonable in scope. (*Morrison*, 97 Ill. App. 3d at 376.) A protectable interest has already been established. Therefore, whether the restrictive covenant is reasonable will be discussed.

Factors to be examined in testing for reasonableness include whether the covenant is supported by valuable consideration, whether the restraint is greater than necessary to protect the promisee, whether enforcement would be injurious to the public, whether enforcement would cause undue hardship to the promisor, whether the durational and geographic scope of the covenant is reasonable, and whether the employer has a protectable business interest. (*Retina Services, Ltd. v. Garoon* (1989), 182 Ill. App. 3d 851, 855, 538 N.E.2d 651.) Each of these factors weighs heavily in plaintiff's favor.

In total, defendant received $140,000 in cash and $7,000 in computer equipment. Thus, he received adequate consideration. The covenant is reasonable in time and scope because it only prohibits contact and solicitation of plaintiff's clients for a two-year period. Moreover, the covenant did not preclude defendant from operating a competing business. There is no hardship to the public because the nonsolicitation agreement does not prohibit competition. As discussed above, plaintiff has a protectable business interest.

Further, review of the record and testimony reveals that defendant violated the covenant. The agreement stated in pertinent part:

"Seller covenants and agrees that he will not for a period of two (2) years from the 26th of March, 1990, engage directly or indirectly in the solicitation of any client of Company (either as principal, agent or consultant) or through any corporation, firm or organization in which he may be an officer, director, employee, shareholder, partner, member of otherwise affiliated. The solicitation precluded by this Agreement is of any present client of A-TECH COMPUTER SERVICE, INC., for any computer related business or employment for services for whom Company was actively engaged in business with as of March 26, 1990. Further, Seller is only restricted from soliciting said clients for business that was being actively performed for that particular client as of March 26, 1990."

It is clear from the words of the agreement that the intent was for defendant not to solicit plaintiff's clients so as to cause plaintiff a loss of business.

■ The advertisements sent to some of plaintiff's clients were clearly solicitous. Defendant's testimony established that defendant had violated terms of his contractual agreement. The trial court examined the nonsolicitation agreement as a whole before deciding to enter a preliminary injunction in plaintiff's favor. The trial court's decision to enter a preliminary injunction was supported by the manifest weight of the evidence. The denial of defendant's motion was not erroneous.

## II

Defendant next contends that the trial court erred in reopening the evidence. We disagree.

■ In general, the decision to reopen a case to allow the introduction of additional evidence rests within the sound discretion of the trial court. (*United States Department of Housing & Urban Development v. Anderson* (1988), 178 Ill. App. 3d 752, 755, 533 N.E.2d 919.) The trial court's decision will not be interfered with by a reviewing court absent an abuse of discretion. *Hollembaek v. Dominick's Finer Foods, Inc.* (1985), 137 Ill. App. 3d 773, 778, 484 N.E.2d 1237.

Factors to be taken into consideration in permitting a party to reopen a case include whether the failure to introduce the evidence occurred because of inadvertence or calculated risk, whether the adverse party will be surprised or unfairly prejudiced by the new evidence, whether the new evidence is of the utmost importance to

the movant's case, and whether any cogent reasons exist to justify denying the request. *United States Department of Housing & Urban Development*, 178 Ill. App. 3d at 755; *Hollembaek*, 137 Ill. App. 3d at 778.

■ Here, the reopening of proofs was not to introduce new evidence but, by court order, was done to pare down and clarify evidence already before the court. Defendant cannot be surprised because it was evidence to which he stipulated. Testimony had established that the original list was a list of plaintiff's clients as of the date in question. This list was uncontroverted and unquestioned by defendant at that time. Moreover, defendant did not object to the admission of the second, pared down client list. Defendant had the opportunity to cross-examine the witness as to any of the names on both lists.

Therefore, the trial court did not abuse its discretion by reopening the evidence.

## III

■ Defendant contends that the trial court erred in refusing him permission to introduce evidence explaining alleged ambiguities in the nonsolicitation agreement. Defendant also contends that the trial court erred by barring testimony of defendant's former attorney. We disagree.

Defendant did not demonstrate how the nonsolicitation agreement was ambiguous. Language is not rendered ambiguous simply because the parties do not agree on its meaning. (*Harlem-Irving Realty, Inc. v. Alesi* (1981), 99 Ill. App. 3d 932, 936, 425 N.E.2d 1354.) Moreover, a written contract is conclusively presumed to include all material terms and all prior negotiations are merged into it. *World Insurance Co. v. Smith* (1975), 28 Ill. App. 3d 1022, 1025, 329 N.E.2d 518.

Defendant contends that the following excerpts demonstrate that the trial court found the contract to be ambiguous:

"THE COURT: This agreement—and what you did is, you didn't resolve the conflict at the time, you were just; incorporate it so it becomes a further problem.

\* \* \*

Now, we have the problem of trying to interpret what the people meant by this particular language."

Defendant took the above extract out of context. The trial court further explained:

"I don't care what this man understood, I don't care if his lawyer advised him three different—it's really irrelevant. The question is did he violate the intent of the agreement or not.

Now, the agreement is a document in evidence in this case. Its intent cannot be modified by parol evidence.

All I can say at this particular point, I don't care what his lawyer said, I don't care what his understanding of the intent is, that's not relevant. It's what the intent of the agreement is, that is relevant. And we may very well, unless there is an ambiguity in the contract, then—evidence to try to explain that ambiguity is not permitted.

\* \* \*

How much of this evidence is relevant to the final solution, it might be very small, but in any event, will you proceed with the witness [Soo Hoo]. Let's finish up with him. His understanding of this agreement is of no consequence to the Court unless it represents an admission against interest, then it might be."

The trial court continued by saying that the problem with the contract was that there was competing language. However, the court deemed that the language was not ambiguous and properly refused the admission of any parol evidence.

Although, at first, the trial court said that the contract was "fuzzy" regarding the definition of "client," the court defined the term and, after a careful reading of the contract as a whole, concluded that the nonsolicitation agreement was not ambiguous. We agree with the trial court.

Moreover, the trial court properly barred the testimony of defendant's initial counsel. Defendant's second attorney stated that he wanted defendant's initial counsel to testify to conversations and negotiations that would explain the alleged ambiguity in the language of the nonsolicitation agreement. The trial court barred such testimony because counsel agreed not to testify to matters pertaining to negotiations. As stated in *Harlem-Irving Realty*, the terms of a contract are not rendered ambiguous simply because the parties do not agree.

Finally, we consider that it was error for the trial court to extend the injunctive relief time period beyond March 26, 1992, to September 26, 1992. However, the question is now moot as the time period has expired. In this case, the error was harmless.

Affirmed.

GORDON, P.J., and McNULTY, J., concur.