KENNETH DIEPHOLZ *et al.*, Plaintiffs-Appellants, v. GEORGE W. RUTLEDGE, Defendant-Appellee.

Fourth District   No. 4—94—1091

Opinion filed December 29, 1995.

Richard L. James, of Paris, for appellants.

Ralph D. Glenn, of Glenn & Logue, of Mattoon, for appellee.

PRESIDING JUSTICE COOK delivered the opinion of the court:
This case presents the question whether an automobile dealer who has covenanted not to engage in the automobile business in a certain county may, nevertheless, solicit customers or advertise within that county.

In 1991, plaintiff Kenneth Diepholz purchased an automobile dealership located in Mattoon, Coles County, Illinois, from defendant George W. Rutledge. As part of the sales transaction, the parties signed a covenant not to complete, which provided in pertinent part:

"GEORGE W. RUTLEDGE, in exchange for the sum of $384,000.00 dollars to be paid on or before Jan. 2, 1992, and as additional consideration for the sale of the business owned by him, known as RUTLEDGE OLDSMOBILE-CADILLAC, INC., hereby agrees that commencing January 2, 1992, he will refrain, directly or indirectly, for a period of four years from the date hereof, from engaging in the automobile sales or service business as an individual or as an owner in Coles County, Illinois. This covenant not to compete is granted to KENNETH DIEPHOLZ individually and to KEN DIEPHOLZ CHEVROLET, a corporate entity."

Subsequent to the purchase, plaintiff moved the dealership from Mattoon to Charleston, which is also located in Coles County.

Plaintiff became aware defendant planned to open an automobile dealership in adjacent Moultrie County. In November 1992, plaintiff sent defendant a letter, advising defendant that plaintiff would consider any solicitation by salesmen or by advertisement in the Charleston-Mattoon area to be a violation of the covenant not to compete. Defendant did not respond to the letter. In December 1992,

defendant did purchase an automobile dealership in Sullivan, Moultrie County, Illinois. Sullivan is approximately 16 to 17 miles from Mattoon and 30 miles from Charleston. Upon acquisition of the Sullivan dealership, defendant began advertising in the surrounding communities, including on radio stations and in newspapers located in Coles County. In January 1993, plaintiff filed suit for injunctive relief and for damages from alleged breaches of the covenant not to compete.

At trial, plaintiff introduced newspaper advertisements placed by defendant in Mattoon's Journal Gazette. Defendant's advertisements announced "We're back!" and welcomed former customers to the new dealership. The Journal Gazette had a total distribution of 12,704 copies, of which 7,900 went to Coles County and 851 went to Moultrie County. Defendant's advertisements also appeared in Charleston's newspaper, which is not circulated in Moultrie County. Plaintiff introduced an interview of defendant that appeared in the December 7, 1992, edition of the Journal Gazette. In the interview, defendant stated he considered all area communities within about a 40-mile radius as part of the Sullivan dealership's service area, and he welcomed old and new customers from the Mattoon area. Defendant also advertised on WLBH radio, AM and FM, through its station in Coles County. Some commercials were aired during broadcasts of Mattoon High School basketball games. WLBH reaches approximately 300,000 listeners in 12 counties.

Defendant testified that his advertisements were intended to reach his old customers, "[w]herever they may exist." He stated that repeat business is "the only thing" in the automobile business. Defendant testified that he believed his only restriction under the covenant was that he could not own or be employed by a business located in Coles County. Defendant estimated that 11% of his sales were to Coles County residents when he owned the Mattoon dealership. At his Sullivan dealership, Coles County residents accounted for 11.3% of the vehicle sales and 4.55% of the service customers.

Defendant stated that he took his customer list from the Mattoon dealership to use at his current dealership. He stated that the list was hardly used and that it upset him that his staff did not use the list. Frank Hutchcraft, a salesman at defendant's Sullivan dealership, testified that he did not use the customer list, as he had his own customer base. Jeff Rutledge, the son of defendant and business manager of defendant's dealership, stated he had developed his own customer list when he worked at three dealerships in Coles County: the former Rutledge dealership in Mattoon, another Mattoon dealership, and plaintiff's dealership in Charleston. Jeff Rutledge did not

know how many names on his customer list were Coles County residents. He had contacted 10% to 20% of the people on his list since he began working for defendant's Sullivan dealership.

The trial court found that plaintiff had drafted the covenant not to compete and had not included specific prohibitions on solicitation or advertising. The court further ruled that the covenant should be strictly construed. Accordingly, the court found plaintiff had not established a violation of the covenant by a preponderance of the evidence. Plaintiff appeals. We affirm.

■ In general, the meaning to be given the plain words of a written instrument is a question of law for the court's determination, where the parties have attached no unusual or peculiar meaning to the words. (*Hagerty, Lockenvitz, Ginzkey & Associates v. Ginzkey* (1980), 85 Ill. App. 3d 640, 641, 406 N.E.2d 1145, 1146.) In the present case, there is no indication that the parties attached unusual or peculiar meanings to the words of the covenant.

■ Courts often state that covenants not to compete must be strictly construed and interpreted and any doubts or ambiguities must be resolved in favor of natural rights and against restriction. (*Hagerty*, 85 Ill. App. 3d at 643-44, 406 N.E.2d at 1147.) Courts treat covenants not to compete with some suspicion because they operate in restraint of trade. (*Russell v. Jim Russell Supply, Inc.* (1990), 200 Ill. App. 3d 855, 864, 558 N.E.2d 115, 122.) Restrictive covenants accompanying the purchase of assets are more favorably viewed than those connected with employer-employee arrangements because of the arm's length bargaining position of the parties. (*Russell*, 200 Ill. App. 3d at 865, 558 N.E.2d at 123.) These covenants are often necessary to protect property interests. "A covenant ancillary to the sale of a business ensures the buyer that the former owner will not walk away from the sale with the company's customers and good will, leaving the buyer with an acquisition that turns out to be only chimerical." *Central Water Works Supply, Inc. v. Fisher* (1993), 240 Ill. App. 3d 952, 957, 608 N.E.2d 618, 622.

■ Here, the covenant in question was part of a negotiated sales agreement between businessmen. The record does not support the trial court's finding that plaintiff was the sole drafter of the covenant. We find no need to construe the covenant particularly narrowly against plaintiff. Nevertheless, we agree with the trial court's interpretation that the covenant does not restrict defendant's right to advertise in Coles County.

The covenant forbids defendant from engaging in the automobile business in Coles County. Advertising is undeniably part of the automobile sales business. However, an automobile dealer is not

"engaged in" business in every location his advertisements reach. Advertising in Coles County is not "engaging in the automobile sales or service business as an individual or as an owner in Coles County." Modern media advertisements normally cover a substantial area. It would have been nearly impossible for defendant to operate a dealership in Moultrie County without advertising in Coles County and other adjacent counties. Had the parties intended to prevent defendant from engaging in business in every adjacent county, the covenant should have so stated.

In *Jackson v. Hammer* (1995), 274 Ill. App. 3d 59, 64, 653 N.E.2d 809, 813, this court stated that the sellers of a hobby store apparently violated the terms of a noncompete clause by mailing advertising flyers to their former customers within the noncompete area. The present case is distinguishable. In *Jackson*, the sellers targeted specific customers with special interests within the noncompete area. Although defendant hoped to reach Coles County residents with his advertisements, he did not engage in the same sort of targeted marketing as the sellers in *Jackson*.

Plaintiff alleges that defendant did, however, solicit Coles County residents. Solicitation may be more objectionable than advertising. Solicitation implies private communication directed at a person or known category of persons. (*Smith, Waters, Kuehn, Burnett & Hughes, Ltd. v. Burnett* (1989), 192 Ill. App. 3d 693, 703, 548 N.E.2d 1331, 1336.) Plaintiff contends defendant violated the covenant by directly soliciting Coles County residents on the customer list taken from the Mattoon dealership.

Parties can and often do draft explicit covenants against soliciting former customers. (See, *e.g.*, *A-Tech Computer Services, Inc. v. Soo Hoo* (1993), 254 Ill. App. 3d 392, 627 N.E.2d 21.) In the absence of an explicit prohibition, the covenant here should not be read as forbidding the solicitation of Coles County residents. Even if the covenant forbids solicitation, plaintiff has not established a breach. At most, the evidence established the customer list was "hardly used." Plaintiff was unable to produce a single Coles County resident who had been contacted by defendant.

In short, the covenant forbade none of the conduct established by plaintiff. Because there was no breach, the judgment of the circuit court of Coles County must be affirmed.

Affirmed.

McCULLOUGH and GARMAN, JJ., concur.