Kidd & Company, Defendant in Error, v. The North American Provision Company, Trading as The Ashland Cold Storage & Warehouse Company, Plaintiff in Error.

**Gen. No. 32,496.**

Opinion filed May 14, 1928. Rehearing denied May 29, 1928.

W. C. KIRK and A. F. RACKERBY, for plaintiff in error.

BROWN, Fox & BLUMBERG, for defendant in error; KARL EDWIN SEYFARTH and LIONEL A. MINCER, of counsel.

Mr. Justice McSurely delivered the opinion of the court.

Plaintiff brought suit alleging breach by defendant of a contract for the safekeeping of a quantity of mustard seed belonging to plaintiff while stored in defendant's warehouse, and upon trial by the court the damages were assessed at $940.17. The defendant seeks a reversal of the judgment for this amount.

It is first presented in defense that defendant was not acting as a warehouseman in the storage of this mustard seed; that its services in this respect were rendered to plaintiff without charge and therefore it was exempt from any claim for damages to the stored goods by virtue of a stipulation in its receipt issued to plaintiff, which was to the effect that all loss or damage was at the owner's risk.

The evidence negatives the claim that the defendant was a gratuitous bailee. The presumption of law is that a bailment is one for the mutual benefit of both parties or for hire. 5 Cyc. 175; *Harper v. Owen H. Fay Livery Co.*, 264 Ill. 459. Plaintiff bought the mustard seed from the defendant at a price which included storage by the defendant, which operated a public warehouse. This is established by the testimony both on behalf of the plaintiff and the defendant. An official connected with the defendant company testified that the price of six cents a pound was to include "storage of the mustard up to the end of 1925," and Mr. Kidd testified to the same effect on behalf of the plaintiff, so that it is established without contradiction that the price paid included storage.

The bailment being one for hire, defendant cannot exempt itself from liability for negligence by the insertion of provisions to this effect in its warehouse receipt. Cahill's St. ch. 114, ¶¶ 211–238; *Colonial Sugar Co. v. Railway Terminal & Warehouse Co.*, 191 Ill. App. 40; *Sibley Warehouse & Storage Co. v. Durand & Kasper Co.*, 102 Ill. App. 406; 200 Ill. 354.

A bailee for hire is bound to exercise ordinary care and diligence in the preservation of the property intrusted to him. *Mayer v. Brensinger,* 180 Ill. 110; *Schaefer v. Washington Safety Deposit Co.,* 281 Ill. 43. The statute also defines the degree of care required of a bailee. Cahill's St. ch. 114, ¶ 256.

What was the condition of the mustard seed on March 19, 1925, at the time it was purchased by plaintiff and defendant issued its receipt therefor? Although there is some variant testimony, the most convincing evidence shows that it was in a good merchantable condition at that time. It had just been graded, cleaned and dried. Mr. Kidd, plaintiff's president, testified that on March 19 he carefully examined this lot of seed and found it to be in excellent condition and thoroughly suitable for manufacture into foodstuff. Mr. Epstein, connected with another concern dealing in mustard seed, testified that he was familiar with this lot and inspected it at about the time plaintiff purchased it and found it in a good merchantable condition and again inspected it after it was in defendant's warehouse in the latter part of February or March, 1925, and that it was in a "very nice, clean and sound condition." Some time prior to September, 1925, 90 bags of seed were withdrawn by plaintiff from storage and used in the manufacture of mustard, and this was in a good, sound and clean condition.

It was established beyond reasonable controversy that in September, 1925, and afterwards the seed was found to be so badly damaged that it was wholly unfit for manufacture into food products until the dirt was removed. This damage consisted of the presence of quantities of dirt, mice and rat tracks or feces, paper, shipping tags, stones, pieces of wood, floor sweepings and other refuse of a foreign character. A witness testified for the defendant that an attempt was made to avoid the damage; that mouse-traps were set in the room and an attempt was made to repair

the bags where the mice had eaten or torn holes; that the mice made a distinction as to the bags. They would attack or destroy a burlap bag but would not bother cotton bags. Another witness testifying for the defendant said that he found a mouse nest in one of the bags. The defendant found that the mice had so destroyed the bags that it was thought better to remove the seed from the bags and put it into a bin, which was done. There was evidence tending to show that after the seed was placed in the bin, the defendant permitted floor sweepings, stones, shipping tags and other foreign matter to be mixed with the seed. There was testimony concerning the character and construction of the warehouse and whether or not it was practical to have dogs or cats to keep the room free from rats and mice. It was shown that mice attacked only the burlap bags, and not the cotton bags, but defendant made no attempt to resack the seed into cotton bags nor to notify the plaintiff of the damage with the request that cotton bags be furnished, but instead dumped the seed into an open bin.

The evidence sufficiently justified the finding of the court that defendant failed to use reasonable care to keep the seed from damage and that it was liable for any ensuing loss.

Counsel for defendant questions the amount allowed as damages. The argument seems to be based on the rule of damages where the commodity has a market value, and the cited cases relate to such a situation. The mustard seed in the instant case did not have a market value. Under such circumstances the opinion of witnesses who are familiar with the value of similar goods in an undamaged condition is admissible. Where there is no market value, the value must be arrived at by the best proof to be had. Sedgwick on Damages, 9th Ed. Vol. I, par. 243, p. 491, and Vol. IV, pp. 2631, 2636; *Ohio & Mississippi R. Co. v. Taylor,* 27 Ill. 207; *Hey v. Hawkins,* 120 Ill. App. 483. In

Sedgwick on Damages, 9th Ed. Vol. IV, p. 2631, it is said:

"In that case (depreciation in value of property) a witness has without doubt the right to state the value before and after the injury; and as the depreciation is a mere matter of the substraction of one of these values from the other, it involves no question of law. It is therefore held that where the amount of damages is merely the depreciation in value of property, a witness is not prevented from giving his opinion of the depreciation merely because the quantum of damages happens to coincide with it." See also *Fox v. Chicago & South Side Rapid Transit R. Co.,* 68 Ill. App. 417.

Three witnesses for plaintiff qualified as experts in valuing mustard seed, having been dealers for from 5 to 13 years, respectively. These witnesses were familiar with the particular seed in this case, both before and after the damage. Two of them gave their opinion that the damage amounted to three cents a pound. Mr. Kidd, the third witness, testified that it was two and a half cents a pound. No evidence was offered in contradiction. Estimating the damages at three cents a pound would have resulted in an amount over $1,000. Since the case was a fourth-class case, in which plaintiff's recovery was limited to $1,000, the court adopted the estimate of two and a half cents a pound and entered judgment for $940.17. The amount of damages was clearly justified by the evidence and the court adopted the proper rule in estimating the same.

We find no reversible error in the record and the judgment is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.