ALLSTATE INSURANCE COMPANY, Plaintiff-Appellant, v. WINNEBAGO COUNTY FAIR ASSOCIATION, INC., Defendant-Appellee.—RICHARD A. SCHEWE *et al.*, Plaintiffs-Appellants, v. WINNEBAGO COUNTY FAIR ASSOCIATION, INC., Defendant-Appellee.—CHARLES C. LANE *et al.*, Plaintiffs-Appellants, v. WINNEBAGO COUNTY FAIR ASSOCIATION, INC., Defendant-Appellee.

Second District   Nos. 84—132, 84—156, 84—160 cons.

Opinion filed February 21, 1985.

John L. Maier, Jr., of Greenwald, Maier & Hudec, Bruce C. Erickson, of Mateer & Erickson, Robert H. Clark and Robert K. Clark, all of Rockford, for appellants.

Michael K. Havrilesko, of Williams & McCarthy, of Rockford, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiffs in these consolidated actions seek to recover damages for loss of personal property from the defendant, Winnebago County Fair Association, Incorporated. The losses occurred as a result of a fire in the building occupied by the defendant in which the plaintiffs' property had been placed for storage. Recovery was sought based upon the theories of breach of contract, negligence and *res ipsa loquitur*. Plaintiffs admitted that prior to placing their property in the

possession of the defendant they signed a "Storage Rental Agreement" prepared by the defendant. Part of that agreement stated "no liability exists for damage or loss to the stored equipment from the perils of fire ***."

The defendant filed a motion to dismiss citing, among other things, the provision in the above rental agreement. The circuit court of Winnebago County found that the language contained in this agreement relieved the defendant of all liability for damage to the plaintiffs' property. The complaints were involuntarily dismissed with prejudice pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619). It is from this order of dismissal that the plaintiffs appeal, raising these issues:

I. Whether the trial court properly dismissed plaintiffs' complaints pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619) by finding that the storage rental agreement was valid and relieved defendant of all liability for damage or loss due to fire and was a complete bar to all claims of plaintiffs for their losses due to fire?

(a) Whether defendant was a warehouseman as defined in section 2 of "An Act to regulate the business of storing personal property for a compensation ***" (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 120)?

(b) Whether defendant could validly contract away its liability for fire damage?

II. Whether the complaint was properly dismissed as insufficient at law?

■ The plaintiffs argue on appeal that the Storage Rental Agreement in question was invalid and therefore did not bar their complaints. Specifically, they argue that the defendant qualified as a warehouseman within the meaning of "An Act to regulate the business of storing personal property for a compensation ***" (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 120) and as such was bound by all of the provisions of the Act except for the stated exceptions provided for in section 1.1 (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 119.1). They conclude that defendant was therefore required to use reasonable care and diligence to protect stored property from loss or damage due to fire as required in section 13 of the Act (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 131). Furthermore, they state that the defendant could not validly contract away its liability for damage or loss by fire because of the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 7—201), which forbids contractual terms exempting a warehouseman from all liability due to the failure to exercise reasonable care. The resolution of the issue is dependent on a finding of whether the defendant was

in fact a warehouseman and was bound by the dictates of the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 7—201).

Section 1.1 of the Act (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 119.1) declares that governmental fairs which store personal property for compensation or hold themselves out as offering storage or storage facilities for personal property should be licensed under a limited special governmental fairs license. A warehouseman is defined as "any person, firm, partnership, association or corporation owning, controlling, operating, managing or leasing any room, house, structure, building, place, yard or protected enclosure in or on which personal property is stored for a compensation within this State" (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 120). Although the defendant clearly fits this definition, it contends that no purpose would be served by creating a special limited license for governmental fairs if they were to be considered the same as any other warehouseman. It supports this argument by reference to the provision in section 1.1 allowing governmental fairs the election of whether or not to post a bond or legal liability policy as required of other warehousemen, with the condition that the governmental fair license be stamped "Not Insured" on the face of the warehouse receipt if neither a bond was posted nor legal liability insurance was required. The defendant also points out the requirement that governmental fairs secure signed written contracts from each depositor. It claims that this latter requirement by its very nature would have no effect if governmental fairs were not permitted to enter into contracts limiting their liability beyond that which an ordinary warehouseman can do. Defendant concludes that the above-stated special provisions indicate that the legislature did not intend fairs to be subject to the same requirements as other public warehouse businesses.

In construing a statutory provision not yet judicially interpreted, a court is guided by both the plain meaning of the language in the statute as well as legislative intent. (*Interlake, Inc. v. Industrial Com.* (1983), 95 Ill. 2d 181; *Griffin v. City of North Chicago* (1983), 112 Ill. App. 3d 901.) Therefore, the threshold task of a court is to examine the terms of the statute itself. (*United States Steel Corp. v. Pollution Control Board* (1978), 64 Ill. App. 3d 34.) The plain language of section 1.1 provides for issuance of a special limited license for governmental fairs. The statute goes on to state that the special license shall be issued for storage of personal property other than that enumerated in the definition of personal property as stated in section 2 of the Act. In contrast to that definition, the personal property allowed to be stored under the special license is named and in-

cludes primarily boats, farm machinery and other similar tangible personal property.

■■ Also, in contrast to the requirements of other warehousemen when applying for a license, governmental fairs are required to have a signed contract with each depositor on forms prescribed by the Illinois Department of Agriculture, but they must also comply with section 10 of the Act (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 128), which requires generally that every operator, upon receipt of personal property, issue and deliver to the depositor a negotiable or a nonnegotiable warehouse receipt in compliance with section 7—202 of the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 7—202). Section 6 of the Act (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 124) requires that prior to the issuance of a license, all personal property warehousemen shall file a surety bond or legal liability insurance policy with the State of Illinois. As mentioned above, however, section 1.1 states that if the governmental fairs licensee does not have a bond or legal liability policy, then the receipt given to the depositor shall have stamped across its face, "Not Insured." Although the defendant notes that this option is in contrast to the requirements set forth for other licensees, to be noticed is that section 10 of the Act also requires that no receipt for goods shall be issued unless it is stated in conspicuous type whether or not such goods are insured for the benefit of the depositor against fire or any other casualty. In short, the plain meaning of the language of the statute is that a governmental fairs licensee differs from other warehousemen only in the type of goods stored, the requirement of a signed contract and the option of not filing with the Department a legal liability insurance policy or bond. Other than the above exceptions, the statute specifically states that a governmental fairs licensee shall comply with all other requirements of the Act which relate to warehousemen in general. We conclude, therefore, that despite the noted differences, governmental fairs licensees are warehousemen.

■■ The next issue presented is whether the defendant could validly contract away its liability for fire damage. The resolution of this question is dependent first upon our finding that governmental fairs are warehousemen. Of primary importance is section 13 of the Act (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 131), which imposed upon every operator a duty to use reasonable care and diligence to protect property stored from loss or damage by fire, theft, burglary or other such causes. A similar standard is imposed in the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 7—204). Illinois law recognizes as part of one's freedom to contract the validity of exculpatory clauses in many cases as relieving a party of liability for negligence.

(*McClure Engineering Associates, Inc. v. Reuben Donnelley Corp.* (1981), 101 Ill. App. 3d 1109, and cases cited therein.) However, the provisions of the Uniform Commercial Code have full force and effect with respect to warehouses, warehousemen, personal property, persons, depositions and receipts (see Ill. Rev. Stat. 1983, ch. 111²⁄₃, par. 127) and are determinative of what can be varied by agreement. Section 1—102(3) of the Uniform Commercial Code states:

> "The effect of provisions of this Act may be varied by agreement, except as otherwise provided in this Act and except that the obligations of good faith, diligence, reasonableness and care prescribed by this Act may not be disclaimed by agreement but the parties may be agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable." Ill. Rev. Stat. 1983, ch. 26, par. 1—102(3).

Although freedom of contract is emphasized in the Code, the principle is subject to certain stipulated exceptions (see Ill. Ann. Stat., ch. 26, par. 1—102, Illinois Code Comment, at 8 (Smith-Hurd 1963)). A warehouseman may limit his liability generally on the condition that the depositor be afforded an opportunity to declare a higher value for which the warehousemen may charge an increased rate. (Ill. Ann. Stat., ch. 26, par. 7—204, Illinois Code Comment, at 36 (Smith-Hurd 1974).) Thus, a warehouse receipt may legally contain a provision exempting the warehouseman from total liability for loss or damage to the goods in storage. In the present case, the agreement provided that "no liability exists for damage or loss to the stored equipment from the perils of fire ***." At issue in the present case, however, is exemption from all liability for fire damage including loss attributed to negligence which is not expressly stated in the disclaimer. The defendants cite *World Products, Inc. v. Central Freight Service, Inc.* (D.N.J. 1963), 222 F. Supp. 849, *aff'd in part* (3d Cir. 1965), 342 F.2d 290, and *Inland Metals Refining Co. v. Ceres Marine Terminals, Inc.* (N.D. Ill. 1983), 557 F. Supp. 344, for the proposition that damages may be limited by a term in the storage agreement beyond which a defendant will not be liable and that damage limiting clauses in a warehouse receipt are generally enforceable in negligence actions. A review of these cases indicates that neither involved *total* exemption from loss due to negligence. Our research has revealed no Illinois cases which have allowed total exemption from such liability. Decisions in other jurisdictions indicate that even when such agreements have sought explicitly to relieve warehousemen from the consequences of their negligence, they have often been regarded as invalid or inef-

fective (see 78 Am. Jur. 2d *Warehouses* sec. 232 (1975), and cases cited therein), and warehousemen are not relieved from the duty of exercising ordinary care. However, a contract, such as in the present case, which exempts a warehouseman from liability for fire loss occurring without negligence is valid and effectual. (93 C.J.S. *Warehousemen & Safe Depositaries* sec. 40 (1956).) From this point of view, the absence of a requirement for governmental fairs to procure insurance and to stamp the receipt "Not Insured," if insurance is not in force, serves the purpose of alerting the bailor to secure his own insurance against such loss if desired. As we see it, however, this would have no relation to a claim for negligence. Plaintiffs cite *Kidd & Co. v. North American Provision Co.* (1928), 249 Ill. App. 28, for the proposition that a warehouse cannot exempt itself from liability for negligence by the insertion of provisions to this effect in its warehouse receipt. The *Kidd* court stated that a bailee for hire is bound to exercise ordinary care and diligence in the preservation of the property entrusted to him as defined by the applicable statute at the time. (249 Ill. App. 28, 30-31.) The standard of reasonable care and diligence is set forth in section 13 of "An Act to regulate the business of storing personal property for a compensation ***" (Ill. Rev. Stat. 1983, ch. 111²/₃, par. 131) and section 7—204(1) of the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 7—204(1). Since section 1—102(3) of the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 1—102(3)) states that the obligations of diligence, reasonableness and care may not be disclaimed by agreement, the effect of section 7—204 of the Uniform Commercial Code (Ill. Rev. Stat. 1983, ch. 26, par. 7—204) limiting damages by a term in the warehouse receipt or storage agreement would be to allow only an agreed monetary limit of liability as opposed to total exemption from all liability for damages. In fact, since the agreement in question did not specifically claim exemption from negligence, nor an agreed limitation of damages, it would seem correct to presume that the standard of reasonable care prevailed and a fire loss due to the defendant's alleged negligence could allow a finding of total liability in the present case. Therefore, we conclude that in the present case the trial court erred in finding that the storage rental agreement was a complete bar to all the claims of the plaintiffs for loss of their stored property due to fire.

■ The defendant next contends that the plaintiffs failed to allege any specific facts in their complaints to support the general conclusional allegations that defendant was negligent and that defendant's negligence was the cause of the fire and proximate cause of damage to plaintiffs' property. Defendant also states that plaintiffs

failed to allege specific facts constituting a sufficient breach of contract claim and that the *res ipsa loquitur* count was not appropriate under the circumstances of this case.

In ruling upon a complaint's legal sufficiency, all facts properly pleaded and all reasonable inferences therefrom must be taken as true. (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179; *Burks v. Madyun* (1982), 105 Ill. App. 3d 917.) A complaint is insufficient if it states mere conclusions, whether of fact or law. (*McCauley v. Chicago Board of Education* (1978), 66 Ill. App. 3d 676; *Plocher v. City of Highland* (1978), 59 Ill. App. 3d 697.) The complaint must minimally allege facts sufficient to set forth the essential elements of the cause of action. (*Woodill v. Parke Davis & Co.* (1978), 58 Ill. App. 3d 349, *aff'd and remanded* (1980), 79 Ill. 2d 26.) However, a complaint should not be dismissed for failing to state a cause of action unless it clearly appears that no set of facts could be proved under the pleadings which would entitle plaintiff to relief. *Gregor v. Kleiser* (1982), 111 Ill. App. 3d 333.

In order to state a cause of action in negligence, a complaint must allege sufficient facts establishing a duty on the part of defendant, a breach of that duty, and a resultant injury. (*Whalen v. Lang* (1979), 71 Ill. App. 3d 83.) A review of the plaintiffs' complaint reveals that contrary to the defendant's allegation in its motion to dismiss, plaintiffs did allege a duty to exercise ordinary care for the safety and preservation of plaintiffs' property by virtue of the contract for bailment which created that duty. Plaintiffs further allege by specific facts that defendant breached its duty due to certain negligent acts or omissions. Notably missing in the plaintiffs' complaint, however, is the allegation that defendant's negligent acts or omissions were the cause of the fire and the proximate cause of the damage to the plaintiffs' property. Absent this allegation, plaintiffs' complaint does not state a cause of action in negligence and was properly dismissed since it was legally insufficient.

■ A review of the amended complaint in appeal No. 84—132, however, shows that, contrary to the defendant's allegations in its motion to dismiss, plaintiff alleged a duty pursuant to section 13 of "An Act to regulate the business of storing personal property for a compensation ***" (Ill. Rev. Stat. 1983, ch. 111⅔, par. 131), a breach of that duty supported by specific facts, and an injury alleged to be the direct and proximate result of the defendant's negligence and damages. Plaintiff's complaint, therefore, states a legally sufficient cause of action in negligence.

■ A review of plaintiff's complaint in appeal No. 84—156 shows

that plaintiffs alleged a duty on the part of the defendant to exercise ordinary care for the safety and preservation of the plaintiffs' property. However, examination of that portion of the complaint alleging breach of the above duty indicates that two of the alleged negligent acts were conclusional in nature and as such did not constitute well-pleaded facts. Nevertheless, the remaining three alleged negligent acts were, in our opinion, sufficient to satisfy the pleading requirement for a breach of duty. Since plaintiffs' complaint also alleges proximate cause and damages, it is sufficient to withstand a section 2—615 motion to dismiss. Ill. Rev. Stat. 1983, ch. 110, par. 2—615.

■■ Defendant further argues that plaintiffs' complaints failed to allege specific facts to satisfy a breach of contract claim. In order to sufficiently state a cause of action for breach of contract, a plaintiff must allege the essential elements of the cause of action. Thus, the complaint must contain allegations of the existence of a valid and enforceable contract, the breach of the contract by the defendant, the performance by the plaintiff and the resultant injury to the plaintiff. (*Thilman & Co. v. Esposito* (1980), 87 Ill. App. 3d 289.) Where the complaint fails to state the essential allegations it is defective and its deficiency may not be remedied by a liberal construction. It is essential in pleading the existence of a valid contract to allege facts sufficient to indicate the terms of the contract. (*Kalkounos v. Four K's, Inc.* (1981), 94 Ill. App. 3d 1011.) Reviewing the plaintiff's complaint in appeal No. 84—156, plaintiffs allege that the defendant was in the business of storage and that after payment of consideration by plaintiffs the property was delivered for the purpose of storage. It is in the obligation assumed by defendant that his duty is found, and his failure to comply with the duty constitutes the breach. (61A Am. Jur. 2d *Pleading* sec. 89 (1981).) Plaintiffs also allege the resultant injury due to defendant's breach. Therefore, it appears that plaintiffs (No. 84—156) have sufficiently stated a cause of action for breach of a bailment contract. We find the complaints in No. 84—132 and No. 84—160 to be similarly sufficient.

■■ Lastly, defendant argues that since the cause of the fire is unknown to either party, it is not appropriate to merely plead *res ipsa loquitur*. The *res ipsa loquitur* doctrine is a type of circumstantial evidence which permits the trier of fact to draw an inference of negligence if plaintiff demonstrates that he or she was injured (1) in any occurrence that would not have occurred in the absence of negligence, (2) by an instrumentality or agency under the management or control of the defendant, and (3) under circumstances indicating the injury was not due to any voluntary act of neglect on the part of the plain-

tiff. (*Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 272; *Guebard v. Jabaay* (1983), 117 Ill. App. 3d 1, 11.) The doctrine relates to physical causes of a kind producing the injury which do not ordinarily exist in the absence of negligence. The mere occurrence of a fire, however, is not sufficient to invoke the doctrine of *res ipsa loquitur*. (*Hahn v. Eastern Illinois Office Equipment Co.* (1976), 42 Ill. App. 3d 29.) It is only when the fact of the fire plus the surrounding circumstances give rise to an inference of negligence that *res ipsa loquitur* is applicable. (Annot., 8 A.L.R. 3d 974, 984, 992 (1966).) Fires occur under a large variety of circumstances. Although Illinois courts have applied the *res ipsa loquitur* doctrine to cases involving fires, it was only when the circumstances beyond the mere occurrence of the fire existed which justified the establishment of a *prima facie* case of negligence that the doctrine was held to be applicable. (*Hahn v. Eastern Illinois Office Equipment Co.* (1976), 42 Ill. App. 3d 29; *Collgood, Inc. v. Sands Drug Co.* (1972), 5 Ill. App. 3d 910; *Arado v. Epstein* (1944), 323 Ill. App. 194.) It is our opinion that in the present case such circumstances do not exist. The origin and cause of the fire are unknown and could have occurred without negligence on the part of anyone. Therefore, we conclude that the doctrine of *res ipsa loquitur* was inapplicable to the case at bar.

Based on the above, it is our opinion that defendant was a warehouseman, was bound by the provisions of the Uniform Commercial Code and could not validly contract away all liability for negligently caused fire damage.

We also conclude that the doctrine of *res ipsa loquitur* was inapplicable in the present case. Except for the negligence count in the complaint in appeal No. 84—160, plaintiffs' complaints were legally sufficient to state a cause of action in negligence and breach of bailment contract.

The judgment of the circuit court of Winnebago County dismissing the complaints is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

LINDBERG and STROUSE, JJ., concur.