**Benjamin TAIMOORAZY, M.D., and Ramsin Benyamin, M.D., Plaintiffs,**

**v.**

**BLOOMINGTON ANESTHESIOLOGY SERVICE, LTD., et al., Defendants.**

**No. 99–1200.**

United States District Court, C.D. Illinois.

Nov. 28, 2000.

Dean B. Rhoads, Robert H. Rhode, Edward F. Sutkowski, Steven P. Oates, Sutkowski & Washkuhn Ltd., Peoria, IL, for plaintiffs.

J. Reed Roesler, Davis & Campbell LLC, Peoria, IL, for defendant.

Paul C. Estes, Hinshaw & Culbertson, Peoria, IL, Robert M. Bennett, Hinshaw & Culbertson, Peoria, IL, for OSF Healthcare System, an Illinois Not–For–Profit Corporation dba Saint Joseph Medical Center ("OSF"), movant.

## *ORDER*

MIHM, District Judge.

This matter is now before the Court on motions for summary judgment by both Plaintiffs and Defendants. For the reasons set forth below, Plaintiffs' Motion for Summary Judgment on Counts I and II of Defendants' Counterclaims [# 47] is GRANTED, and Defendants' Motion for Summary Judgment [# 67] is GRANTED IN PART and DENIED IN PART.

## JURISDICTION

In Counts I and II of the Complaint, Plaintiffs claim that they were discriminated against on the basis of their national origin in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* Thus, this action invokes the federal question jurisdiction of the Court pursuant to 28 U.S.C. § 1331.

## BACKGROUND

In early 1994, Defendants, Drs. Stanley Aung ("Aung"), Fang Tse Lu ("Lu"), Peggy Mulcahy ("Mulcahy"), Witold Rybicki ("Rybicki"), and Renyan Wang ("Wang") (hereinafter referred to collectively as the "Defendant Doctors"), provided nonexclusive anesthesiology services at St. Joseph Medical Center ("St. Joseph") in Bloomington, Illinois. In May 1994, they wrote to a top administrator at St. Joseph proposing that they incorporate and enter into a contract that would allow them the exclusive right to provide these services. Thereafter, the Defendant Doctors formed the Illinois corporation of Bloomington Anesthesiology Service, Ltd. On July 14, 1994, each of them were issued 20 shares of stock in the corporation. They took action to elect officers; Wang was elected president. Although Plaintiffs do not dispute that Bloomington Anesthesiology was formed as a corporation, they further allege that Drs. Aung, Lu, Mulcahy, Rybicki, and Wang also formed a partnership at this time and interacted with each other as partners.

Each of the Defendant Doctors entered into an Employment Agreement with Bloomington Anesthesiology to provide professional services on behalf of the corporation. Bloomington Anesthesiology subsequently entered into a contract with OSF Healthcare System, the operator of St. Joseph, to provide exclusive anesthesia services to the hospital from September 1994 through February 1998.

In September 1994, the Defendant Doctors held a meeting at which the possibility of extending an offer of employment to Plaintiff Taimoorazy ("Taimoorazy") was discussed. An Employment Agreement was prepared and presented to Taimoorazy by Wang and was ultimately executed. Taimoorazy contends that Wang made representations that he would become part of the "partnership" after two years of employment, and further asserts that after the expiration of two years, he was congratulated by Wang, Mulcahy, Aung, and Rybicki and told he was then a partner. He then began receiving draws of $20,000.00 per month, just as the Defendant Doctors did, his vacation was increased to the same level of six weeks per year, and his salary was increased to $240,000.00 per year, which is the same salary that the Defendant Doctors were making.

On or about July 1, 1996, Plaintiff Benyamin ("Benyamin") also executed an Employment Agreement with Bloomington Anesthesiology.

The contract between Bloomington Anesthesiology and OSF/St. Joseph provided that Bloomington Anesthesiology would designate an acceptable physician to serve as the Medical Director of Anesthesia at St. Joseph. On July 1, 1997, Taimoorazy was designated to succeed Mulcahy in this position. As Medical Director, he was responsible for overseeing the quality of patient care provided by anesthesiologists at St. Joseph and reporting matters relating to the quality of patient care.

In November 1997, Taimoorazy attended a meeting with Bloomington Anesthesiology's accountant, who informed him that he was not a partner. When Taimoorazy questioned this, he was told to call the corporation's attorney, Clay Cox ("Cox"). In a telephone conversation, Cox confirmed his understanding that Taimoorazy was not a partner. After receiving this information, Taimoorazy and Benyamin had a meeting with Wang and Aung, during which they confirmed that Taimoorazy was a partner and that they would resolve the confusion regarding his partnership within two weeks. When questioned by Benyamin after the two weeks had passed, Wang purportedly stated, "I think we have done everything we were supposed to do according to the contract and we are just going to stick with the contract." (Benyamin Dep. at 116–17.)

On December 20, 1997, Taimoorazy's attorney sent a letter to Wang requesting to review records regarding Taimoorazy's

ownership interest in Bloomington Anesthesiology. Cox responded on behalf of Bloomington Anesthesiology, stating that the board had not yet determined whether they would extend Taimoorazy an offer to purchase an interest in the corporation.

On February 2, 1998, Taimoorazy and Benyamin received letters indicating that their employment by Bloomington Anesthesiology was terminated immediately pursuant to Section 10.1 of their Employment Agreements. The letters went on to state that each would be subject to a restrictive covenant which prohibited them from practicing medicine in either McLean or Livingston County, Illinois, for two years following the termination, as provided in Article 20 of the Employment Agreement.

On May 8, 1998, Taimoorazy and Benyamin incorporated Anesthesiology Consultants, Ltd.; each was issued 1,000 shares of stock in the corporation. Shortly thereafter, their applications for privileges at BroMenn Hospital in Bloomington were approved, and they began working at BroMenn on May 18, 1998.

On June 25, 1999, Plaintiffs commenced this action. In Counts I and II of the Complaint, Taimoorazy and Benyamin, respectively, allege employment discrimination on the basis of national origin in violation of Title VII. Count III asserts a claim on behalf of Taimoorazy for wrongful expulsion/breach of fiduciary duty under the Illinois Uniform Partnership Act. In Count IV, Taimoorazy alleges a state law claim for breach of contract, while Benyamin alleges the same claim in Count V. Count VI is a state law claim by Taimoorazy for retaliatory discharge, and Count VII is a state law claim by both Plaintiffs for intentional interference with prospective contractual relations. Defendants then filed a Counterclaim, in which Count I alleges a violation of a non-competition restriction by Taimoorazy and Count II alleges a similar violation by Benyamin.

Both Plaintiffs and Defendants have now filed Motions for Summary Judgment which are fully briefed and ready for resolution. Defendants seek judgment as a matter of law on Counts III, IV, VI and VII of the Complaint, while Plaintiffs seek summary judgment on Counts I and II of the Counterclaim. This Order follows.

## LEGAL STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir.1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.,* 883 F.2d 1307, 1312 (7th Cir.1989). Summary judgment will be denied where a reasonable jury could return

a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir.1995).

## DISCUSSION

I. *Illinois Partnership Act*

In Count III, Taimoorazy alleges that the Defendant Doctors' failure to abide by their oral promise to share equally in the profits and surplus of the partnership that he contends existed, as well as the management and conduct of such partnership, violated the Illinois Partnership Act, 805 ILCS 205/18, *et seq.* Defendants contend that any such claim is barred by the Statute of Frauds.

Under Illinois law, "[n]o action shall be brought ... upon any agreement that is not to be performed within the space of one year from the making thereof, unless ... in writing and signed by the party to be charged." *McInerney v. Charter Golf, Inc.*, 176 Ill.2d 482, 223 Ill.Dec. 911, 680 N.E.2d 1347, 1351 (Ill.1997), *citing* 740 ILCS 80/1. Courts have interpreted this provision to provide that a contract is unenforceable if it is not capable of being performed within one year. *Id.*

Here, Taimoorazy alleges that under the oral agreement between himself and Wang, he was to work for two years at a lower rate of pay and then be made an equal partner upon the expiration of the two-year term. Thus, it is clear that the purported partnership agreement contemplated a performance duration of longer than one year, bringing the alleged agreement squarely within the bar of the Statute of Frauds. *See Cargo, Inc. v. Allstates Air Cargo, Inc.*, 1998 WL 601910, at *2 (N.D.Ill. Sept.9, 1998), *citing Sinclair v. Sullivan Chevrolet, Co.*, 45 Ill.App.2d 10, 14–15, 195 N.E.2d 250 (3rd Dist.1964); *Gilliland v. Allstate Insurance Co.*, 69 Ill. App.3d 630, 26 Ill.Dec. 444, 388 N.E.2d 68, 70 (1st Dist.1979) (finding that "[i]f a contract stipulates a duration of service greater than one year, the fact that either party could have terminated the contract within one year will not remove the Statute of Frauds barrier"); *Doerrfeld v. OAO International Corp.*, 1998 WL 142393, at *3 (N.D.Ill. March 24, 1998).

Taimoorazy attempts to avoid the application of the Statute of Frauds by arguing that his full performance under the oral agreement takes this case outside the statute. In support of this argument, he cites *Kozasa v. Guardian Elec. Mfg. Co.*, 99 Ill.App.3d 669, 54 Ill.Dec. 920, 425 N.E.2d 1137, 1144 (1st Dist.1981), for the proposition that "an oral contract is not unenforceable under the statute of frauds if the contract has been completely performed by one party." Thus, he contends that since he fully performed his obligations under the agreement by working for two years at a reduced salary, the Statute of Frauds should not bar him from enforcing Wang's promise to make him a full partner. However, none of the cases cited by Taimoorazy involves an employment situation that was otherwise governed by a comprehensive written employment contract requiring the same performance, which the Court finds to be a significant distinction.

As noted by Defendants, the so-called "full performance doctrine" relied on by Taimoorazy is a common law rule that operates "in the form of an estoppel." *Strzelecki v. Schwarz Paper Co.*, 824 F.Supp. 821, 825 (N.D.Ill.1993), *citing Meyer v. Logue*, 100 Ill.App.3d 1039, 56 Ill.Dec. 707, 427 N.E.2d 1253, 1256–57 (1st Dist.1981); *Zayre Corp. v. S.M. & R. Co., Inc.*, 882 F.2d 1145, 1155 (7th Cir.1989). This is important because courts have consistently held that a party may not maintain an action for estoppel "where the performance which is said to satisfy the requirement of detrimental reliance is the same performance which supplies the consideration for the contract." *Lippert Marketing, Ltd. v. Kingwood Ceramics, Inc.*, 1998 WL 699023, at *24 (N.D.Ill. Oct.5, 1998), *citing Prentice v. UDC Advi-*

*sory Services, Inc.*, 271 Ill.App.3d 505, 207 Ill.Dec. 690, 648 N.E.2d 146, 151 (1st Dist. 1995). In other words, "[o]nce a written contact is found to exist covering the subject matter of the alleged promises," the doctrine of estoppel is inapplicable. *Id.* "When there is an express contract governing the relationship out of which the promise emerged, and no issue of consideration, there is no gap in the remedial system for promissory estoppel to fill." *All–Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869–70 (7th Cir.1999).

In this case, it is undisputed that on or about November 21, 1994, Taimoorazy entered into a written Employment Agreement with Bloomington Anesthesiology. Section 1.1. of this agreement set forth a term of employment commencing on February 1, 1995, and expiring on January 31, 1997. Article 21 of this agreement further stated that upon the successful completion of the term of employment, Bloomington Anesthesiology anticipated offering Taimoorazy the opportunity to become a shareholder in the corporation by purchasing shares, but was under no obligation to do so; nor was Taimoorazy under any obligation to buy the shares in the event that they were offered. Thus, there is an express contract governing the relationship out of which the alleged promise emerged, leaving no gap in the remedial system for an estoppel-like remedy to fill.

Moreover, the performance Taimoorazy contends supported the oral promise of partnership is the same performance that he was obligated to render under the plain and unambiguous terms of his written Employment Agreement, which includes no reference to the purported offer of partnership but rather clearly states that at the end of his term of employment, he may be offered the opportunity to buy stock in the corporation. There is a presumption under Illinois law that written contracts include all material terms agreed upon by the parties, and where a written contract appears complete and unambiguous on its face, "extrinsic evidence of a prior or contemporaneous agreement is not admissible to alter the terms" of the written contract. *Commonwealth Eastern Mortgage Co. v. Williams,* 163 Ill.App.3d 103, 114 Ill.Dec. 360, 516 N.E.2d 515, 520 (1st Dist.1987).

Taimoorazy admits that the conversation in which Wang stated that he would work with less salary for two years and that would constitute his buying in to become a partner "just like one of us" occurred prior to signing the Employment Agreement. Thus, the Court finds that the parol evidence rule would also bar any consideration of the argument that the alleged oral representation between Taimoorazy and Wang made prior to the execution of the written agreement was unaffected by or modified the provisions of the written Employment Agreement. If Taimoorazy was concerned that Article 21 of the Employment Agreement did not fully or accurately reflect his understanding of what would happen following his two-year term of employment, he had ample opportunity to correct this before signing the contract.

Following the signing of the Employment Agreement, Taimoorazy relies on instances in which he was referred to by various persons by the term "partner" or some variant of that term. However, he is unable to set forth any post-Employment Agreement evidence indicating that the mere use of the term "partner" entitled him to an automatic ownership interest in the Bloomington Anesthesiology corporation in contravention of the process specifically set forth in Article 21 of the Employment Agreement. Even assuming that these vague comments were sufficient to be considered a subsequent attempt to modify the contract, Article 13 of the Employment Agreement expressly provides:

> No amendment of this Agreement will be valid or enforceable unless such amendment is reduced to writing and thereafter properly executed by the Employer and Employee.

Where the terms of a written contract unambiguously require any amendments to be made in writing, the attempt to suggest such modification through extraneous comments, assertions, and conjecture is contrary to Illinois law and will not be permitted. *Abbott v. Amoco Oil Co.,* 249 Ill. App.3d 774, 189 Ill.Dec. 88, 619 N.E.2d 789, 797–98 (2nd Dist.1993), *citing Continental Mobile Telephone Co. v. Chicago SMSA Ltd. Partnership,* 225 Ill.App.3d 317, 167 Ill.Dec. 554, 587 N.E.2d 1169 (1st Dist.1992).

Accordingly, Taimoorazy has failed to meet his burden of demonstrating that Defendants failed to comply with any binding agreement to give him an automatic ownership interest in Bloomington Anesthesiology in violation of the Illinois Partnership Act. Defendants are therefore entitled to summary judgment on Count III of the Complaint. The Court notes parenthetically that this case presents a prime example of a situation in which litigation could have been prevented by the early procurement of good legal advice by everyone involved.

II. *Breach of Contract—Taimoorazy*

The allegations of Count IV are similar to those contained in Count III, except that relief is sought for breach of contract. The Complaint clearly indicates that the contract purportedly breached was the alleged offer of partnership. Under Illinois law, an action for breach of contract requires the following four elements: (1) the existence of a valid and enforceable contract; (2) the breach of the contract by the defendant; (3) performance of the contract by the plaintiff; and (4) a resulting injury to the plaintiff. *Allstate Insurance Co. v. Winnebago County Fair Association, Inc.,* 131 Ill.App.3d 225, 86 Ill.Dec. 233, 475 N.E.2d 230, 236 (2nd Dist.1985); *Thilman & Co. v. Esposito,* 87 Ill.App.3d 289, 42 Ill.Dec. 305, 408 N.E.2d 1014, 1020 (1st Dist.1980).

As the Court has determined as a matter of law that Taimoorazy has failed to demonstrate the existence of a valid and enforceable offer of a legal partnership, as opposed to the mechanism by which he might become a shareholder in the corporation under Section 21 of the Employment Agreement, he has necessarily failed to show a required element of a breach of contract claim. Accordingly, Defendants are entitled to summary judgment on Count IV of the Complaint.

III. *Retaliatory Discharge—Taimoorazy*

Count VI alleges that Defendants terminated Taimoorazy because he refused to compromise his ethical duties as the Medical Director of Anesthesiology at St. Joseph in response to their belief that he was too aggressive in attempting to fulfill those duties, that he refused to handle complaints regarding the medical services of the Defendant Doctors in house at Bloomington Anesthesiology rather than through formal channels, and also because he was Iranian. He further contends that his retaliatory discharge violated a clear mandate of public policy, as it involved his fulfillment of patient care and reporting duties. Defendants argue that Taimoorazy's retaliatory discharge claim is precluded under Illinois law.

At the time of his termination, the term of Taimoorazy's employment agreement had expired. Absent an express contractual provision to the contrary, the general rule followed in Illinois with respect to the employer-employee relationship is employment at will. In an employment at will relationship, an employee may be fired for any reason or no reason at all, so long as the discharge does not violate clearly mandated public policy. *Belline v. K–Mart Corp.,* 940 F.2d 184, 186 (7th Cir. 1991). There is, however, a limited exception to the employment at will doctrine known as retaliatory discharge. *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). The tort of retaliatory discharge "is an attempt to balance employers' interests in operating effi-

cient businesses, thereby permitting them to fire an employee for any reason or no reason, and society's interests in seeing its public policies carried out, thereby preventing an employer from firing an employee for 'any reason' when that reason contravenes public policy." *Nappi v. Meridian Leasing Corp.*, 859 F.Supp. 1177, 1179 (N.D.Ill.1994), *citing Fellhauer v. City of Geneva*, 142 Ill.2d 495, 154 Ill.Dec. 649, 568 N.E.2d 870, 876 (Ill.1991).

Three elements to the prima facie case of retaliatory discharge must be established in order for Taimoorazy to succeed: (1) he was discharged; (2) his discharge was in retaliation for engaging in protected activities; and (3) his discharge violated a clearly mandated public policy. *Hartlein v. Illinois Power Co.*, 151 Ill.2d 142, 176 Ill.Dec. 22, 601 N.E.2d 720, 728 (1992). There is no dispute that Taimoorazy was discharged; he has therefore established the first element. Rather, the dispute centers around the latter two elements. In short, Defendants argue that there is no "clearly mandated public policy" which would allow Taimoorazy to maintain this cause of action, specifically because the ethical obligations of physicians practicing medicine in Illinois are sufficient safeguards and also because the Illinois Medical Studies Act would preclude any such claim.

At the outset, it should be mentioned that the bar is set quite high for the plaintiff who attempts to come within this exception to the employment at will doctrine; however, the bar is not insurmountable. The Illinois Supreme Court has not invited courts to engage in judicial activism when addressing retaliatory discharge claims.

> [T]his court has not ... "rejected a narrow interpretation of the retaliatory discharge tort" and does not "strongly support" the expansion of the tort. The common law doctrine that an employer may discharge an employee-at-will for any reason or for no reason is still the law in Illinois, except when the discharge violates a clearly mandated public policy.

*Barr v. Kelso–Burnett Co.*, 106 Ill.2d 520, 88 Ill.Dec. 628, 478 N.E.2d 1354, 1356 (Ill. 1985).

Here, Taimoorazy claims that he was discharged from his employment because he reported quality of care issues concerning the Defendant Doctors to the administration at St. Joseph instead of handling those issues discreetly within Bloomington Anesthesiology. Specifically, Taimoorazy asserts that Defendants were angry because he addressed complaints in the course of quality assurance meetings at the hospital that certain of the Defendant Doctors were falling asleep during procedures or leaving the room while patients were anesthetized during heart bypass surgery.

Consequently, the Court disagrees with Defendants' argument that this case is factually analogous to the case involving the ethical obligations of attorneys presented in *Jacobson v. Knepper & Moga, P.C.*, 185 Ill.2d 372, 235 Ill.Dec. 936, 706 N.E.2d 491, 494 (Ill.1998). Where quality of patient care issues are concerned, this type of allegation is clearly related to the fundamental public policy favoring the effective protection of the lives of citizens. This is particularly so in situations like those involved in this case, where the physician's duties arise from instances where the patients are unconscious at the time of the alleged wrongdoing and are especially vulnerable to risk of harm or death resulting from neglect by the attending anesthesiologist.

Taimoorazy has set forth deposition testimony from Drs. Mulcahy, Wang, and Walter Knoll, another anesthesiologist who joined Bloomington Anesthesiology, as well as his own testimony, from which a reasonable jury could conclude that his termination was motivated by a desire to punish him for airing Bloomington Anesthesiology's dirty laundry, so to speak, to the hospital administration instead of handling

it quietly among the members of the group. In other words, the Court finds a genuine issue of material fact with respect to whether or not Taimoorazy was fired because he refused to acquiesce to the Defendant Doctors' wishes that complaints regarding their services be handled internally, thereby exposing information that could possibly give rise to malpractice claims against Bloomington Anesthesiology to individuals outside the corporation.

Accordingly, with respect to this aspect of his claim, Taimoorazy has made a sufficient showing of a potentially pretextual termination in violation of public policy to survive summary judgment, at least as the motion pertains to any claim against Bloomington Anesthesiology as his employer. As the Court has previously determined that he has shown no valid and enforceable partnership relationship between himself and the Defendant Doctors individually, and there has likewise been no reasonable demonstration of an actual, legal partnership, as opposed to a shareholder relationship, among the Defendant Doctors, the claim asserted in Count VI may proceed against Bloomington Anesthesiology only, and Drs. Wang, Aung, Lu, Mulcahy, and Rybicki individually are not proper defendants. *See Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill.2d 12, 230 Ill.Dec. 596, 694 N.E.2d 565, 570 (Ill. 1998) (finding that the only proper defendant in a retaliatory discharge case is the employer itself.) [1]

Insofar as Taimoorazy claims that he was discharged on the basis of his national origin, the Court finds that he has utterly failed to bring forth any evidence suggesting that the fact that he was Iranian was a motivating factor in his discharge. Accordingly, no rational jury could find in his favor on this aspect of his claim, and Defendants are entitled to partial summary judgment in this regard.

IV. *Intentional Interference With Prospective Contractual Relations*

In Count VII, Taimoorazy and Benyamin contend that they had a reasonable expectation of entering into a valid business relationship with Anesthesia Associates and others in McLean County and the surrounding area, but that Defendants purposefully interfered to prevent their expectancy from developing into a valid business relationship. Plaintiffs also claim that Defendants' actions delayed the approval of their hospital privileges at BroMenn Hospital.

Under Illinois law, the elements of a claim for tortious interference with prospective economic advantage are:

> (1) that the plaintiff had a reasonable expectation of entering into a valid business relationship, (2) that the defendant knew of this expectancy, (3) that the defendant intentionally and unjustifiedly interfered to prevent the expectancy from being fulfilled, and (4) that damages to the plaintiff resulted from the interference.

*Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 502 (7th Cir.1998), *citing Anderson v. Vanden Dorpel*, 172 Ill.2d 399, 217 Ill.Dec. 720, 667 N.E.2d 1296, 1299 (Ill.1996). Defendants' sole argument with respect to this claim is that Plaintiffs have offered no credible evidence that they were damaged as a result of the actions of either Bloomington Anesthesiology or any of the Defendant Doctors.

1. Defendants also asserted that Taimoorazy's retaliatory discharge claim should be barred because the Illinois Medical Studies Act creates a privilege shielding the minutes of quality control meetings, such as the meetings in which Taimoorazy participated as Medical Director, from disclosure, and without such disclosure, they are denied the information necessary to present a defense. However, in his response, Taimoorazy correctly notes that discriminatory discharge decisions are evaluated on the information that was known at the time of the discharge and further asserts that, in any event, the Defendant Doctors attended the very same meetings about which they now claim they cannot learn. As Defendants make no effort to contradict either assertion in their reply, the Court finds that this argument merits no further discussion.

During a shareholders' meeting on January 20, 1998, the Defendant Doctors determined that they would ask their attorney to prepare Plaintiffs' termination letters, as well as notes to various surgeons regarding the restrictive covenants in their Employment Agreements. In fact, on January 28, 1998, before notice of termination had even been given to Plaintiffs, Bloomington Anesthesiology's attorney sent letters to at least McLean County Surgi Center and the attorney for BroMenn Hospital stating that Drs. Taimoorazy and Benyamin were subject to a covenant which prohibited them from practicing medicine in McLean County, when the actual terms of the covenant only provided that they were prohibited from competing with Defendants in McLean County. On January 30, 1998, seven additional letters were sent to surgeons with whom Plaintiffs had previously worked advising them of Plaintiffs' termination. Furthermore, Dr. Knoll testified in his deposition that following Plaintiffs' termination, Dr. Wang had stated that he would spend all of his money on attorneys to stop the Plaintiffs from working in Bloomington. (Knoll Dep. at 52–53.)

In late February 1998, Taimoorazy received a job offer from Anesthesia Associates, an anesthesia group at BroMenn Hospital. He was told that Anesthesia Associates' attorney, who he later learned was also the attorney for Bloomington Anesthesiology, would draft the employment agreement; however, he never received any such agreement. On February 26, 1998, the minutes from a Bloomington Anesthesiology shareholders' meeting reveal that the Defendant Doctors were aware that Plaintiffs had "made contact with at least one of the anesthesia groups at Bromenn" [sic] and that they "discussed, that through various channels, it would not be wise for either Bromenn [sic], or the anesthesia groups to accommodate Drs' [sic] Ramsin Benyamin and Benjamin Taimoorazy." That same day, Bloomington Anesthesiology's attorney wrote a letter to Anesthesia Associates, which he also represented, making them aware that both Plaintiffs were subject to a covenant not to compete which would prohibit them from practicing medicine in McLean County for a period of two years. Taimoorazy then testified in his deposition that a doctor from Anesthesia Associates subsequently told him that this attorney had advised Anesthesia Associates not to hire Taimoorazy. (Taimoorazy Dep. at 96.) Benyamin also testified that this same doctor told him that Anesthesia Associates was planning to send Taimoorazy the contract but then their attorney persuaded them otherwise. (Benyamin Dep. at 148.)

Also in late February 1998, Defendants filed a lawsuit seeking to prevent Plaintiffs from practicing medicine in McLean County. This lawsuit was voluntarily dismissed before having been resolved on the merits.

On March 23, 1998, Plaintiffs applied for privileges at BroMenn Hospital. Plaintiffs have both testified that representatives of BroMenn Hospital told them that they would have to investigate their applications as a result because of Defendants' lawsuit and letters. On March 31, 1998, Bloomington Anesthesiology's attorney sent additional letters to McLean County Surgi Center, Gerardo A. Grieco, M.D., Anesthesia Associates of Bloomington/Normal, St. James Hospital, and BroMenn Hospital claiming that Plaintiffs continued to be subject to a restrictive covenant that prevented them from practicing medicine in McLean County. The approval of Plaintiffs' applications for privileges at BroMenn ultimately took two months, which Plaintiffs testified in their depositions was much longer than normal.

From these facts, it is possible that a reasonable jury could conclude that when Bloomington Anesthesiology learned that Plaintiffs were attempting to obtain other employment, the corporation, through its attorney, took actions to prevent Plaintiffs from practicing medicine in McLean County. Although the Court is not aware of any monetary figures having been alleged, the nature of the facts is

such that a reasonable jury could then infer that Plaintiffs suffered damages as a result of the corporation's conduct, and Defendants' Motion for Summary Judgment will be denied in part as to Bloomington Anesthesiology.

With respect to the claim as alleged against the individual Defendant Doctors, the Court must again conclude that Plaintiffs have failed to state any cause of action. The state court lawsuit was brought by the corporation, not the individual defendants. Actions taken during shareholders' meetings were taken by the corporation, not the individual defendants, and the letters that were sent to various medical entities in McLean County were sent by the corporation's attorney at the direction of the corporation. Thus, the Court finds that the Motion for Summary Judgment should be granted in part as it pertains to the Defendant Doctors individually.

V. *Remaining Claims Against Individual Defendants*

Counts I and II of the Complaint involve Title VII claims against Bloomington Anesthesiology and do not name the Defendant Doctors individually in accordance with well-established federal law. Summary judgment has been granted in favor of the Defendants on Counts III and IV of the Complaint, and Count V is an action for breach of contract by Benyamin that does not name the Defendant Doctors individually. Furthermore, summary judgment has been granted in favor of the Defendant Doctors individually with respect to Counts VI and VII, leaving no counts in which Defendant Doctors are being sued individually pending.[2] As a result, the Court finds that Doctors Wang, Aung, Lu, Mulcahy, and Rybicki individually shall be terminated as parties to the Complaint in this litigation.

VI. *Counterclaim—Count I*

In Count I of the Counterclaim, Defendant Bloomington Anesthesiology alleges that between January 30, 1998, and February 1, 1999, Taimoorazy violated the restrictive covenant in his Employment Agreement by providing medical services in competition with Bloomington Anesthesiology within McLean County, Illinois. Specifically, Article 20 of Taimoorazy's Employment Agreement provides:

> So long as this Agreement remains in force and effect, and during the two (2) year period following the termination hereof, Employee may not engage in or associate with, directly or indirectly, any medical practice, business or other activity, whether as a shareholder, director, officer, partner, investor, sole proprietor, agent, employee, consultant or otherwise, which competes with any business conducted by the Employer and Employee may not perform any act which confers economic benefits on any medical practice or other business which competes with any business conducted by the Employer. The restrictions recited in this Article 20 are operative within McLean County, Illinois.

In general, covenants not to compete are not looked upon with favor because they operate as partial restraints of trade. *Hydroaire, Inc. v. Sager,* 98 Ill.App.3d 758, 53 Ill.Dec. 928, 424 N.E.2d 719 (1981). Under Illinois law, a restrictive covenant in an employment agreement may be enforced only if the time and geographical limitations are reasonably necessary to protect the employer's legitimate business interest. *Arpac Corp. v. Murray,* 226 Ill.App.3d 65, 168 Ill.Dec. 240, 589 N.E.2d 640, 649 (1st Dist.1992); *Abel v. Fox,* 274 Ill.App.3d 811, 211 Ill.Dec. 129, 654 N.E.2d 591, 593 (4th Dist.1995). "The law will not enforce a contract merely to prohibit ordinary competition." *Carter–Shields v. Alton Health Institute,* 2000 WL 1673855, at *6 (5th Dist. Nov. 3, 2000).

Plaintiffs and the Defendant both offer numerous arguments why the covenant is

2. The Counterclaim is not brought on behalf of Defendant Doctors in their individual capacities, but rather only on behalf of Bloomington Anesthesiology as a corporate entity.

or is not valid and should or should not be enforceable. However, as the Court finds one argument to be so simple, clear, and obviously dispositive, that argument will be addressed without laboring down the other circuitous pathways identified by the parties.

Contrary to the interpretation that has sometimes been offered by Bloomington Anesthesiology in its letters and pleadings, the plain language of the restrictive covenant in Article 20 of the Employment Agreement does not preclude Taimoorazy from doing business or practicing medicine in McLean County; rather, it only prohibits him from participating in or associating with a practice which *competes* with Bloomington Anesthesiology. "Competition" is commonly defined as "[t]he efforts or action of two or more commercial interests *to obtain the same business* from third parties." *Black's Law Dictionary,* 7th Edition (emphasis added). Similarly, Illinois courts have defined the term as follows: " *'Compete'* means to seek or strive for something *for which others are contending* or to vie with another for a prize .... to strive for a position, reward, profit or goal for which another is striving; to contend in rivalry." *Hagerty, Lockenvitz, Ginzkey, etc. v. Ginzkey,* 85 Ill.App.3d 640, 40 Ill.Dec. 778, 406 N.E.2d 1145, 1146 (4th Dist.1980) (emphasis added). An individual who is merely present and available to provide services, but who has not actively solicited business, has not engaged in competition. *Id.* at 1147, 40 Ill.Dec. 778.

Here, Taimoorazy sought positions with the anesthesia group that provided services to BroMenn Hospital and ultimately obtained staff privileges at BroMenn Hospital. The record is devoid of any evidence suggesting that Plaintiffs have actively solicited any of the patients or hospitals served by Bloomington Anesthesiology or that Bloomington Anesthesiology is either seeking or has any interest in developing an anesthesiology practice at BroMenn Hospital. To the contrary, Bloomington Anesthesiology admits that as part of its agreement with OSF Healthcare System to provide exclusive anesthesia services at St. Joseph, it agreed not to provide any anesthesia services at BroMenn Hospital. In fact, the contract specifically provides that Bloomington Anesthesiology "shall not participate in or maintain an interest, either directly or indirectly, in any anesthesiology services which are in competition in any manner with the [St. Joseph] MEDICAL CENTER or the SURGICAL CENTER within McLean County, Illinois."

Defendant argues that there has been competition in violation of Article 20, because BroMenn Hospital in some sense competes with St. Joseph for patients. However, the Court rejects this argument, as there has been no demonstration that Plaintiffs have "actively solicited business" as opposed to being "merely present and available" to provide services when requested at a facility in which the Defendant Doctors are precluded from offering services. *See Hagerty, et al.,* 40 Ill.Dec. 778, 406 N.E.2d at 1147. The concept of theoretical or conceptual competition proposed by Defendant is contrary to Illinois law.

Moreover, "the meaning to be given to the plain words of a written instrument is a question of law for the court's determination where the parties have attached no unusual or peculiar meaning to the words." *Id.* at 1146, 40 Ill.Dec. 778. The plain language of the restrictive covenant at issue in this case prohibits Plaintiffs from competing with Bloomington Anesthesiology and the business that it conducts but does not prohibit them from engaging in any services offered by St. Joseph or practicing medicine in a location within McLean County that does not infringe on the business conducted by Bloomington Anesthesiology. The fact that the hospitals themselves may compete for patients is not included within the plain language of the restrictive covenant and is simply irrelevant to any legitimate interest that Bloomington Anesthesiology has in protecting its medical practice at St. Joseph. In drafting the Employment Agreement, Bloomington Anesthesiology did not in-

clude language indicating an intent to bar Plaintiffs from practicing medicine at any hospital that can be said to compete with the hospital(s) at which Defendant provides exclusive services, and it cannot now seek to enforce an aspect of a covenant that does not exist.

Thus, under the particular and somewhat unique circumstances of this case, Bloomington Anesthesiology is contractually prohibited from providing any anesthesia services at BroMenn Hospital and can therefore have no legitimate business interest in preventing Taimoorazy from providing such services. In light of the facts of record in this case, Taimoorazy cannot reasonably be said to have associated with or participated in a practice which competes with the business conducted by Bloomington Anesthesiology or to have actively solicited its clients. Accordingly, even assuming that the restrictive covenant was generally valid and enforceable, the Court finds that Taimoorazy has not violated Article 20 of his Employment Agreement as written, and he is entitled to judgment as a matter of law on Count I of the Counterclaim.

VII. *Counterclaim—Count II*

In Count II of the Counterclaim, Bloomington Anesthesiology asserts a similar claim against Benyamin. Benyamin's Employment Agreement contains the same restrictive covenant as that contained within Taimoorazy's Agreement, with the exception that Benyamin's covenant covers both McLean and Livingston Counties. As the same set of unique factual circumstances applies the circumstances surrounding his conduct, the Court finds that for the reasons set forth with respect to Count I of the Counterclaim, Benyamin has not violated Article 20 of his Employment Agreement and is entitled to summary judgment in his favor on Count II of the Counterclaim.

VIII. *Motion to Compel or Strike*

As it was not necessary for the Court to consider the affidavit of Attorney A. Clay Cox in ruling on the present motions, it finds Plaintiffs' Motion to Compel Discovery or to Strike Cox Affidavit to be moot.

## CONCLUSION

For the reasons set forth herein, Plaintiffs' Motion for Summary Judgment on Counts I and II of Defendants' Counterclaims [# 47] is GRANTED, and Defendants' Motion for Summary Judgment [# 67] is GRANTED IN PART and DENIED IN PART. The individual defendants are DISMISSED from all counts of the Complaint, and Plaintiffs' Motion to Compel Discovery or to Strike Cox Affidavit [# 55-1 & # 55-2] is MOOT. As a result of the rulings contained herein, Defendants Wang, Aung, Lu, Mulcahy, and Rybicki are TERMINATED as individual defendants in this matter.

This matter remains set for Final Pretrial Conference on December 8, 2000, at 1:00 p.m.